**STATE of Minnesota, Respondent,**

v.

**Dennis Edward TATE, Appellant.**

**No. A03–485.**

Court of Appeals of Minnesota.

June 29, 2004.

---

Mike Hatch, Attorney General, Kelly O'Neill Moller, Jennifer Beens Harper, Assistant Attorneys General, St. Paul, MN; and Janelle Kendall, Stearns County Attorney, St. Cloud, MN, for respondent.

John M. Stuart, State Public Defender, Theodora Gaitas, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; WILLIS, Judge; and HUDSON, Judge.

## OPINION

WILLIS, Judge.

Appellant challenges his conviction of first-degree assault, arguing that (1) the district court violated his constitutional right to the free exercise of religion by ordering him to "tuck [his cross] inside [his] sweater" during trial, (2) the district court abused its discretion by allowing the state to introduce a statement of appellant's alleged accomplice as substantive evidence under the catchall exception to the hearsay rule, and (3) the prosecutor committed prejudicial misconduct in his closing argument by inflaming the jury's passions and by shifting the burden of proof to the defense.

We conclude that, although the district court's order regarding appellant's cross arguably infringed on appellant's constitutional right to the free exercise of religion, it was not in this context an error affecting a fundamental trial right that warrants a new trial. Further, we conclude that the district court did not abuse its discretion by admitting the accomplice's statement under the catchall exception and that the prosecutor did not commit misconduct that warrants reversal of appellant's conviction. We affirm.

## FACTS

On the evening of February 5, 2002, the St. Cloud police received a call from a homeowner reporting a suspicious person outside his home. When Officer Aaron Dix arrived at the home, he found Michael Krzmarzick outside the home, bleeding profusely from his head. Krzmarzick was taken to a local hospital where it was determined that he had a depressed skull fracture that required surgery. At the hospital, Krzmarzick told the medical staff that he had been assaulted; a member of the medical staff called the St. Cloud police, and Officer Jason Burke was sent to the hospital to investigate. Krzmarzick told Officer Burke that earlier in the evening, (1) he had biked to a local store, where he saw a woman whom he had met before but whose name he could not recall, (2) the woman was with a man, and they offered to give Krzmarzick a ride, (3) before they all left, the man placed Krzmarzick's bicycle in the back of the couple's pickup truck, and (4) when the vehicle stopped, all three got out, and the man hit Krzmarzick over the head. Medical personnel told Officer Burke that they believed Krzmarzick's injury was caused by being hit with an object that would cause a blunt-force injury, such as a hammer.

At approximately 2:20 a.m. on February 6, 2002, approximately 30 miles outside St. Cloud, Paynesville police officer Joseph Schmitz stopped a pickup truck for erratic driving. Velma Shavers was the driver, and appellant Dennis Edward Tate was the passenger. Officer Schmitz brought Shavers back to his squad car to check her license and to question her; while he was investigating, he received a call telling him that an assault had recently occurred in St. Cloud and that the vehicle and the people that he had just stopped matched the descriptions of those involved. After being informed that the victim had been assaulted with a "rounded item," Officer Schmitz returned to the vehicle and asked Tate, the owner of the truck, if he could "look around" the vehicle; Tate consented. In the back of the truck, Officer Schmitz found a chrome tire wrench and a tire jack. Tate and Shavers were transported to the Stearns County jail on charges unrelated to this case.

Officer Gerald Lehner interviewed Shavers and Tate at the jail. In a tape-recorded statement, Shavers told Officer Lehner that she and Tate had given Krzmarzick a ride and that, after they stopped at a cemetery, they had taken money from Krzmarzick; Shavers stated that she had asked Krzmarzick where his money was and that Tate had taken $46 out of Krzmarzick's pocket. She stated that Tate hit Krzmarzick in the head with a "silver" tire iron, and she and Tate left Krzmarzick at the cemetery. She then described a house in St. Cloud where she and Tate had left Krzmarzick's bicycle. Officer Lehner then spoke with Tate, who denied (1) being at the store, (2) seeing Krzmarzick and giving him a ride, and (3) having anything to do with the assault and the robbery.

After the interviews, Officer Lehner drove to the house that Shavers had described and found Krzmarzick's bicycle there. Officer Lehner also confiscated the clothing that Tate was wearing at the time of his arrest; a forensic scientist at the Minnesota Bureau of Criminal Apprehension compared blood spots on Tate's shirt with samples of both Tate's and Krzmarzick's blood and determined that the blood on the shirt matched Krzmarzick's DNA profile. As the investigation continued, the officers obtained videotape from security cameras outside the store where Krzmarzick said that he had gone before the assault. The videotape showed Tate placing Krzmarzick's bicycle in the bed of the pickup truck before he, Shavers, and Krzmarzick drove off together.

Before trial, Shavers told a defense investigator that she had lied in her statement to Officer Lehner. At trial, the state moved for admission of Shavers's tape-recorded statement to Officer Lehner as substantive evidence under Minnesota Rule of Evidence 803(24). After Shavers told the district court that she would be invoking her Fifth Amendment privilege against self-incrimination, the state sought an order giving Shavers use immunity to compel her testimony; the district court granted Shavers use immunity and ordered her to testify. Shavers testified that (1) she had lied about some of the information in her earlier statement to Officer Lehner, (2) she and Tate had not stolen money from Krzmarzick, and (3) Tate had not assaulted Krzmarzick. Tate also testified that, although he and Shavers had given Krzmarzick a ride, they had not taken any money from him, and Tate had not assaulted him.

Krzmarzick testified that (1) when he was at the store, Shavers and Tate offered to give him a ride to a friend's apartment, (2) Tate drove them to a secluded area, (3) Tate came toward him with a "silver" tire iron and hit him on the head, and (4) Shavers and Tate both went through his pockets and took approximately $40 from him.

The jury found Tate guilty of first-degree assault, in violation of Minn.Stat. § 609.221, subd. 1 (2000); first-degree aggravated robbery, in violation of Minn. Stat. § 609.245, subd. 1 (2000); and second-degree assault, in violation of Minn. Stat. §§ 609.222, subd. 1, 609.11, subd. 4 (2000). This appeal follows.

## ISSUES

I. Is appellant entitled to a new trial because the district court ordered him not to openly wear a cross around his neck during trial?

II. Did the district court abuse its discretion by allowing the state to introduce as substantive evidence a prior statement of appellant's alleged accomplice?

III. Did the prosecutor commit misconduct by making statements in his closing argument that were intended to inflame

the passions of the jury and by shifting the burden of proof to the defense?

## ANALYSIS

### I.

Before trial, the prosecutor requested that Tate put a cross that he was wearing around his neck inside his shirt so that it was not visible to the jury, arguing that Tate's cross would be "sending a religious connotation to the jury." The district court then told Tate "to tuck [the cross] inside [his] sweater." Tate argues that the district court's order (1) violated his federal and state constitutional rights to the free exercise of religion and (2) precluded the jury from viewing him as a "whole person" when he testified. Tate asserts that he is, therefore, entitled to a new trial. Whether the district court's actions violated Tate's constitutional rights is a question of law, which this court reviews de novo. *See State v. Schwartz*, 598 N.W.2d 7, 9 (Minn.App.1999), *review denied* (Minn. Sept. 28, 1999).

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The Minnesota Freedom of Conscience Clause provides:

> The enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people. The right of every man to worship God according to the dictates of his own conscience shall never be infringed; . . . nor shall any control of or interference with the rights of conscience be permitted.

Minn. Const. art. I, § 16. The Minnesota Constitution affords religious protections broader than those in the federal constitution. *State v. Hershberger*, 462 N.W.2d 393, 397 (Minn.1990). Minnesota courts apply a balancing test when analyzing whether a state regulation infringes a right under the Freedom of Conscience Clause of the Minnesota Constitution. *Hill–Murray Fed'n of Teachers v. Hill–Murray High Sch.*, 487 N.W.2d 857, 865 (Minn.1992). Courts must ask if (a) the objector's belief is sincerely held; (b) the state regulation burdens the free exercise of religious beliefs; (c) the state interest in the regulation is compelling; and (d) the state regulation uses the least restrictive means. *Id.*

Tate argues that it is clear that the district court's restriction violated his right to the free exercise of religion because (1) he "strongly objected to the suggestion that he hide his cross, an indication that his religious beliefs are sincere" and (2) the district court failed to conduct its own inquiry into the substance and sincerity of his beliefs. *See Joseph v. State*, 642 So.2d 613, 615 (Fla.Dist.Ct.App.1994) (holding that the Free Exercise Clause entitled defendant to wear sweatshirt and jeans with religious pictures and names when trial court conceded that defendant's clothing was based on his religious beliefs and there was no evidence to support trial court's decision to prohibit defendant from wearing the clothing); *In re Palmer*, 120 R.I. 250, 386 A.2d 1112, 1114 (1978) (holding that trial court's refusal to allow defendant to appear in courtroom while wearing a prayer cap unjustifiably infringed on his right to the free exercise of religion because trial court did not attempt to determine the sincerity of defendant's beliefs or whether such beliefs precluded the removal of the prayer cap in court).

Tate further asserts that the state failed to articulate any compelling state interest in having Tate hide his cross, although the district court expressed concern that if Tate did not hide his cross, the jurors

would see it because they were "captives of the system and would not have that same right to express their religious beliefs or the right to refuse to have other's religious beliefs expressed to them." Tate maintains that it is unclear what interest was promoted by the hiding of his cross and that, further, no interest in courtroom decorum could outweigh his right to wear his cross.

Tate acknowledges that there is no case-law prescribing a remedy for when it is found after conviction that a district court's order violated a defendant's constitutional right to the free exercise of religion and further admits that "there is no articulable prejudice here." But because the right to the free exercise of religion is fundamental, Tate argues that a violation of that right during the course of a criminal trial "should be considered presumptively prejudicial" and that he is entitled to a new trial. *See State v. Sanders*, 376 N.W.2d 196, 205 (Minn.1985) (listing certain trial errors that are presumptively prejudicial).

■ Ordinarily, a criminal defendant seeking a new trial bears the burden of proving not only that error occurred but also that it was prejudicial. *Id.* at 204. "If the appellate court concludes that error occurred, it analyzes the error in the context of the record on appeal to determine the likelihood that the error affected the verdict." *Id.* But certain errors, such as the complete denial of counsel to a criminal defendant and errors affecting a defendant's right to a decision by an impartial jury, are errors that are presumed to be prejudicial. *Id.* at 205.

■ Here, because the district court did not conduct an inquiry into the substance and sincerity of Tate's beliefs, the district court's order forbidding Tate from openly wearing his cross was error. But because the district court's order did not affect a fundamental right guaranteed in a criminal trial, such as the complete denial of counsel to a criminal defendant or the right to a trial by an impartial jury, we conclude that it was not a "presumptively prejudicial" error warranting a new trial. And we further conclude that Tate is not entitled to a new trial because, as Tate concedes, "there is no articulable prejudice here."

■ Tate also argues that his convictions should be reversed because the district court's order directing him to hide his cross affected his constitutional right to testify, citing *State v. Brouillette* for the proposition that the district court's order prevented the jury from seeing the "whole person" during his testimony and may have affected their determination of his credibility. 286 N.W.2d 702, 707 (Minn. 1979). But *Brouillette* does not support Tate's argument. *Brouillette* explains that impeachment by evidence of a prior crime aids the jury by allowing it "to see 'the whole person' and thus to judge better the truth of his testimony." *Id.* (quoting *St. Paul v. DiBucci*, 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975)). Further, Tate's argument that the cross would allow the jury to see his "whole person" is contrary to Minn. R. Evid. 610, which provides that "[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced."

## II.

■ Tate argues that the district court committed reversible error by allowing the state to introduce Shavers's out-of-court statement to Officer Lehner as substantive evidence. Absent an erroneous interpretation of the law, whether to admit or to exclude evidence is a question within

the district court's discretion. *State v. Buggs,* 581 N.W.2d 329, 334 (Minn.1998). Although generally inadmissible, hearsay statements may be admitted under one of several exceptions, including the catchall exception. Minn. R. Evid. 803.[1] Rule 803(24) excludes from the hearsay rule

> [a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Tate argues that Shavers's statement to Officer Lehner did not have the requisite circumstantial guarantees of trustworthiness. In *State v. Ortlepp,* 363 N.W.2d 39, 44 (Minn.1985), the supreme court held that an accomplice's statement, which the accomplice claimed at trial was false, had sufficient circumstantial guarantees of trustworthiness to be admissible under rule 803(24). The court reasoned (1) there was no confrontation problem presented by the admission of the statement as substantive evidence because the accomplice "testified, admitted making the prior statement, and was available for cross-examination by defense counsel"; (2) because the accomplice admitted making the prior taped statement, "there was no real dispute over whether he made it or over what it contained"; (3) the reliability of the

statement was enhanced because it was made against the accomplice's penal interest; and (4) the statement "was consistent with all the other evidence the state introduced, evidence which pointed strongly toward both the defendant and [the accomplice's] guilt."

Tate concedes that (1) Shavers testified, admitted making the tape-recorded statement to Officer Lehner, and was available for cross-examination; (2) admitted making the prior statement, and the contents of the statement are undisputed; and (3) the statement was consistent with the state's other evidence. Tate admits that, therefore, "most of the *Ortlepp* factors were satisfied." But Tate maintains that the statement did not meet the third *Ortlepp* factor because Shavers's statement to Officer Lehner was not against her penal interest, asserting that Shavers did "everything she could to shift blame from herself to Tate."

We conclude that the third *Ortlepp* factor was satisfied. In her statement to Officer Lehner, Shavers stated "I know we just took somebody['s] money. That's what I was involved in. The taking." This statement was clearly against Shavers's penal interest because it inculpated her in the robbery. Further, this court has found that the third *Ortlepp* factor may be satisfied even when a declarant's statement is not against the declarant's penal interest providing that the declarant is hostile to the state and supportive of the defendant. *See State v. Whiteside,* 400 N.W.2d 140, 146 (Minn.App.1987) (concluding that the district court did not abuse its discretion by admitting under Minn. R.

---

1. Because Shavers, as the declarant, testified at trial and was subject to cross-examination concerning the statement, the Confrontation Clause does not apply to invalidate the hearsay exception. *See Crawford v. Washington,* — U.S. —, —, 124 S.Ct. 1354, 1369 n. 9, 158 L.Ed.2d 177 (2004). Thus, although the statement appears to be the type of testimonial statement that concerned the Court in *Crawford,* that case, which deals only with the protections provided by the Confrontation Clause, does not apply here.

Evid. 803(24) declarant's prior statement inculpating the defendant, her boyfriend, because declarant was hostile to the prosecution and supportive of the defendant), *review denied* (Minn. Mar. 18, 1987). Here, Shavers testified that she and Tate had been in an "off and on" relationship for two years and that she loves him. Thus, because Shavers was hostile to the prosecution and supportive of Tate, Shavers's statement was against her interest.

And we further note that there are additional circumstantial guarantees of trustworthiness with Shavers's statement because (1) it was made the day after the incident, (2) Shavers was not promised leniency in exchange for her statement, (3) Officer Lehner did not ask her leading questions or coerce her statement in any way, and (4) her statement was substantially consistent with the other evidence because she told the investigator where the crime occurred, identified the weapon used in the assault, stated how much money was taken from the victim, and told the investigator where she and Tate had left Krzmarzick's bicycle. *See State v. Soukup,* 376 N.W.2d 498, 501 (Minn.App.1985) (determining that although statement was not against declarant's interest, it was admissible under rule 803(24) because there were other circumstantial guarantees of trustworthiness), *review denied* (Minn. Dec. 30, 1985).

Tate further argues that he is entitled to a new trial because it was improper for the district court to allow the prosecutor to call Shavers as a witness at trial solely for the purpose of impeaching her with the prior statement. *See State v. Dexter,* 269 N.W.2d 721, 722 (Minn.1978) (stating that Minn. R. Evid. 801(d)(1)(A) precludes a prosecutor from calling a witness solely for the purpose of impeaching the witness with a prior unsworn statement that is otherwise inadmissible hearsay). But

when a prior statement is admissible as substantive evidence, "the *Dexter* problem is not present and defendant has no legitimate cause to complain." *Ortlepp,* 363 N.W.2d at 43. Tate's argument is, therefore, not compelling.

## III.

 Tate also argues on appeal for the first time that the prosecutor committed serious misconduct during his closing argument by attempting "to inflame the passions of the jury" and improperly suggesting that the defense had some burden of proof. Whether a defendant is entitled to a new trial because of prosecutorial misconduct is within the discretion of the district court, which is in the best position to appraise the effect of any misconduct. *State v. Wahlberg,* 296 N.W.2d 408, 420 (Minn.1980). An appellate court will reverse a conviction, or reverse the district court's denial of a motion for a new trial, on the ground of prosecutorial misconduct only if the misconduct was "inexcusable and so serious and prejudicial that a defendant's right to a fair trial [was] denied." *State v. Smith,* 541 N.W.2d 584, 588 (Minn. 1996). In cases involving less-serious prosecutorial misconduct, an appellate court will reverse only if the misconduct substantially influenced the jury to convict. *State v. Caron,* 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974). A defendant usually is deemed to waive his right to raise the issue of prosecutorial misconduct on appeal when he fails to object at trial. *State v. Torres,* 632 N.W.2d 609, 617–18 (Minn.2001). The failure to object implies that the defendant found nothing improper in the closing argument. *State v. Daniels,* 332 N.W.2d 172, 180 (Minn.1983). Relief will be granted in the absence of a timely objection only in extreme cases involving "unduly prejudicial" prosecutorial misconduct. *State v. Whittaker,* 568 N.W.2d 440, 450 (Minn.1997).

■ Tate argues that the prosecutor made two statements in his closing argument that improperly inflamed the passions of the jury. *See State v. Porter,* 526 N.W.2d 359, 363 (Minn.1995) (stating that a prosecutor may not argue to inflame the passions and prejudices of the jury). The first was:

> I remember reading once a quote, and the quote went "you can judge the worth of a nation by how the people treat their most vulnerable citizens." And I thought about that a lot, and I thought about that in the context of this case. First of all, I think it is a philosophy for all of us to live by. How do you treat the people that are more vulnerable than you? And isn't that what you folks are going to determine in this case?

The second was: "This is despicable. Horrendous. Did you really need to crack open his skull to steal his $49? Really?"

■ Closing arguments should focus on the evidence and any reasonable inferences that can be drawn from the evidence. *State v. Yang,* 627 N.W.2d 666, 679 (Minn.App.2001), *review denied* (Minn. July 24, 2001). Because the two comments at issue did not focus on the evidence, analyze and explain the evidence, or present any proper inferences to be drawn from the evidence, we conclude that the prosecutor was intending to inflame the passions of the jury with his comments. But the statements were not "unduly prejudicial" and do not require reversal of Tate's conviction. The statements were short comments, involving 13 lines of a closing argument transcript that is 25 pages long. *See State v. Washington,* 521 N.W.2d 35, 40 (Minn.1994) (holding that jury was not unduly influenced by improper statements in prosecution's closing argument in part because the statements were found on only four pages of the 45–page transcript of the closing argument).

Further, the statements likely did not play a substantial role in the jury's decision to convict because the state's theory was supported by evidence consisting of (1) the store's surveillance video showing Tate, Shavers, and Krzmarzick putting Krzmarzick's bicycle in the back of the pickup and driving off together, (2) Krzmarzick's testimony that the person who gave him a ride was the person who assaulted him, (3) Shavers's statement to the police the day after the incident that Tate had assaulted Krzmarzick, and (4) Krzmarzick's blood on Tate's shirt. *See State v. Walsh,* 495 N.W.2d 602, 607 (Minn.1993) (concluding that, even where closing argument was "in some respects out-of-bounds," it is regarded as harmless error unless the misconduct played a substantial role in jury's decision to convict).

■ Tate next argues that the prosecutor committed prejudicial misconduct by shifting the burden of proof to Tate when he stated:

> Folks, all of this evidence that you see is disclosed before these trials. The defendant in their defense have to explain away this evidence.... But that is what to the best of their abilities is going on here, trying to explain away the evidence. But there is so much to explain away in this case.

Because the state bears the burden of proving all of the elements of a crime beyond a reasonable doubt and is prohibited from shifting to a defendant the burden to prove his innocence, Tate argues that the prosecutor committed misconduct by improperly implying that the defense had some burden to "explain away" the state's evidence. *State v. Gassler,* 505 N.W.2d 62, 69 (Minn.1993). But we conclude that (1) the prosecutor's comments, taken as a whole, do not indicate that the burden of proof was shifted to Tate because the prosecutor further stated in his closing argu-

ment, "Now folks, the defendant, he doesn't have to prove anything, and that is the way the law should be. We should have to prove our case," and (2) any prejudice was alleviated by the district court's instruction to the jury that Tate was not required to prove his innocence.

Further, we conclude that if the prosecutor's statement were error, the error was harmless because, based on the state's evidence, the statement likely did not play a substantial role in the jury's decision to convict.

## DECISION

Although the district court arguably infringed on Tate's constitutional right to the free exercise of religion by ordering him to wear his cross inside his sweater, this was not an error affecting a fundamental trial right that warrants a new trial. The district court did not abuse its discretion by admitting the prior statement of Tate's accomplice as substantive evidence under the catchall exception. And Tate is not entitled to a new trial on the basis of prosecutorial misconduct when he failed to timely object and the record does not show unduly prejudicial misconduct.

**Affirmed.**