*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0034**

State of Minnesota,
Respondent,

vs.

Paris Treall Haines,
Appellant.

**Filed January 12, 2015
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CR-13-16954

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel Foster Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Smith, Judge.

## U N P U B L I S H E D   O P I N I O N

**SMITH**, Judge

We affirm because (1) any evidentiary error by the district court was harmless,

(2) the prosecutor did not call a witness for the sole purpose of impeachment through

inadmissible prior statements, (3) sufficient evidence supports the conviction, and (4) any prosecutorial misconduct does not require reversal.

## FACTS

On the evening of May 17, 2013, appellant Paris Haines was home alone with his girlfriend, L.A. L.A. texted her sister-in-law that she was hurt, bleeding, and needed help. The sister-in-law called L.A. back, but L.A., whispering and crying, said she couldn't call 911 herself. L.A. told her sister-in-law that she and Haines had argued about money earlier, but did not say that Haines had hurt her. Afterward, the sister-in-law called 911. During the 911 call, the sister-in-law told the dispatcher that Haines and L.A. had a history of domestic abuse and that L.A. was scared to call 911.

When police arrived, L.A. answered the door and appeared to be injured, in shock, and unable to speak. The apartment had heavy furniture and belongings thrown about and several holes punched in the walls. L.A. told police that Haines was taking a bath. Emergency personnel carried L.A. to paramedics because her injuries made walking difficult. Paramedics treated L.A. for a significant laceration to her wrist, bruises on her leg that looked like "whip marks," and bruises to her chest, abdomen, and arms.

When interviewed by police, L.A. repeatedly said that she did not know how she was injured. During the interview and while being treated by paramedics, she was shaking and crying and appeared to be terrified.

Meanwhile, police arrested Haines. Haines told police that L.A. had been drinking with him all day and that she had punched the holes in the wall. Police interviewed L.A. a second time at the hospital where, after being told what Haines said, L.A. said that she

2

punched the holes in the walls and that Haines did not assault her. She also said that Haines had gotten angry at her over money.

The state charged Haines with felony domestic assault. In July 2013, L.A. texted her sister-in-law about testifying at trial. L.A. said that she had hurt herself. When the sister-in-law said she was going to accurately relay what L.A. told her on May 17, L.A. got angry and told her not to show up. During the text conversation, the sister-in-law asked L.A. if Haines was in a gang, which L.A. denied.

L.A. testified that she cooperated with police and told them she punched holes in the wall while in a rage. She also testified that she did not say she had ever been harmed by Haines and did not recall saying that she feared Haines, that she argued with Haines about money, that Haines gets violent when drunk, or that she was grateful her sister-in-law called police.

At trial, the emergency room doctor testified that a paramedic told him that L.A. said Haines assaulted her. However, the doctor could not recall hearing the actual statement. The doctor also testified that L.A.'s injuries were consistent with assault, but also testified that the leg bruises and wrist laceration could have been self-inflicted. One of the paramedics who treated L.A. testified that L.A. did not say who injured her. She also testified that L.A. said she had argued with Haines about money earlier in the evening.

The jury found Haines guilty of domestic assault. Haines then moved for acquittal or a new trial on the grounds of insufficient evidence, erroneous evidentiary rulings that deprived Haines of a fair trial, and prosecutorial misconduct for identifying defense

counsel as a public defender. The district court denied the motion and sentenced Haines to 24 months' imprisonment.

## D E C I S I O N

### I.

Haines argues that the district court erred in its evidentiary rulings by: (1) admitting photos of a text message that asked if Haines was in a gang; (2) admitting an emergency room doctor's testimony that he was informed by a paramedic that L.A. said Haines assaulted her; (3) admitting the mother-in-law's testimony that L.A. was afraid to return to the home in January 2013 because of Haines; (4) admitting photos of text messages between L.A. and her sister-in-law and allowing the jury to review them during deliberations; (5) admitting testimony about L.A.'s statements to police on May 18, 2013; and (6) excluding evidence about L.A.'s relationship with her husband and his family that prevented Haines from presenting a complete defense and confronting the witnesses. Haines objected to the first five items, but not the sixth. Haines argues that the errors taken cumulatively entitle him to a new trial because they significantly affected the verdict.

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citations omitted). "A reversal is warranted only when the error substantially influences the jury to convict." *State v. Loebach*, 310 N.W.2d 58, 64 (Minn. 1981). But we will not reverse

4

where "the prejudicial evidence was only a small portion of that admitted," and where the remaining evidence of guilt is "overwhelming." *State v. Townsend*, 546 N.W.2d 292, 297 (Minn. 1996).

## A.

Haines first argues that the district court abused its discretion by admitting photos of a text asking if Haines is a gang member. At trial, Haines objected to the evidence as unduly prejudicial. The state argued that it offered the text to prove that L.A. was afraid of Haines and thus afraid to cooperate with police, not that he was in a gang. The district court admitted the photos, including the gang reference, and offered to consider a limiting instruction. The record does not show that defense counsel ever submitted a limiting instruction for consideration.

Evidence is inadmissible if it is irrelevant or if its probative value is substantially outweighed by the risk of unfair prejudice. Minn. R. Evid. 402, 403. Evidence of fear should not be admitted "to create an inference that a defendant is a bad person who is likely to commit a violent crime." *State v. McArthur*, 730 N.W.2d 44, 51 (Minn. 2007). The district court admitted the evidence as probative of L.A.'s state of mind, that she was afraid to cooperate with police because of Haines's alleged gang ties. But it is difficult to ascertain how the sister-in-law's question about whether Haines was in a gang is indicative of L.A.'s state of mind two months earlier when police interviewed her. In contrast, it is easy to see the prejudice that could result from implying that Haines is in a gang.

5

Nonetheless, the prosecution never highlighted the gang reference in its questioning, L.A.'s immediate response in the text conversation was a firm denial, and L.A. testified that she has never known Haines to associate with a gang. No other evidence of a gang association was offered. Based on the single, interrogative gang-reference in a seven-page exhibit and L.A.'s repeated clear denials that Haines has any connection to a gang, we hold that any error in admitting the gang reference was harmless.

**B.**

Second, Haines argues that the district court abused its discretion by admitting double-hearsay testimony from the emergency room doctor who treated L.A. Haines objected to testimony that the doctor was "informed via EMS that the patient reported being assaulted by a significant other" as hearsay and a Confrontation Clause violation. The state argued that it was admissible as a statement for the purpose of medical diagnosis and that Haines could cross-examine the paramedic, who was testifying later. The district court overruled Haines's objection and allowed the testimony.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Double hearsay is only admissible if each level of hearsay fits within an exception. Minn. R. Evid. 805. "Statements made for purposes of medical diagnosis or treatment and describing . . . [the] general character of the cause or external source" of injuries or symptoms are not excluded by the hearsay rule if they are "reasonably pertinent to diagnosis or treatment." Minn. R. Evid. 803(4). "The rationale

6

behind the rule is the patient's belief that accuracy is essential to effective treatment." *State v. Robinson*, 718 N.W.2d 400, 404 (Minn. 2006) (quotation omitted).  Here, the assailant's identity was not pertinent to L.A.'s treatment; therefore, the statement does not fit a hearsay exception.  *See id.* at 407 (holding that identity of the assailant is not pertinent when there is no evidence of psychological abuse, no request for treatment of psychological harm, and no concern about the victim's psychological well-being).

Again, however, the error was harmless given the totality of the record.  First, the doctor testified that L.A.'s injuries were consistent with assault, not self-injury, despite conceding that it was possible that individual injuries could have been self-inflicted.  Second, photos and detailed testimony about the injuries made it possible for the jury to weigh the credibility of the doctor's testimony against L.A.'s testimony that she had injured herself.  Third, the paramedic did not note any injuries to L.A.'s hands that would likely be present if she had punched the walls, as she testified.  Finally, there was no evidence to suggest that anyone other than Haines could have injured L.A.  Therefore, any error was harmless.

In addition, the district court did not err in overruling Haines's Confrontation Clause objection.  A defendant has the constitutional right to confront the witnesses against him through cross-examination at trial.  U.S. Const. amend. VI.  "[W]hether the admission of evidence violates a criminal defendant's rights under the Confrontation Clause is a question of law this court reviews de novo."  *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006).  Based on the assertion that the paramedic who received L.A.'s statement would be testifying, the district court permissively overruled the objection

7

because Haines would have the opportunity for cross-examination. The paramedic then testified that L.A. did not make the statement and was instead vague about the source of her injuries, and the jury was able to consider that in determining how much weight to give the statement.

## C.

Haines next argues that L.A.'s mother-in-law's testimony that L.A. said she was afraid to return to the home because "[h]e would beat her up again" was not admissible as a prior inconsistent statement because it was not made under oath. While Haines is correct that the remark was not made under oath and therefore is not admissible substantively, Haines does not discuss its admissibility for impeaching L.A.'s testimony that Haines never harmed her and that she is not afraid of him.

A prior inconsistent statement is admissible for impeachment purposes if the witness has an opportunity to explain or deny the statement and the opposing party has an opportunity to interrogate the witness. Minn. R. Evid. 613(b). L.A. explained the statement on direct examination when she testified that she "made up a story." Haines cross-examined L.A. about the statement as well. Therefore, the district court did not err by admitting the mother-in-law's testimony.

## D.

Fourth, Haines argues that the district court erred by improperly admitting photos of a text conversation between L.A. and her sister-in-law and granting the jury's request to review the photos during deliberations. Haines objected to their admission, arguing that the photos were irrelevant, unduly emphasized the texts, and unfairly prejudiced

8

Haines. In addition, Haines argues that the district court abused its discretion by allowing the jury to review the texts when they were admitted only as illustrative evidence.

We first consider the admissibility of the evidence. "The use of visual aids is an issue within the discretion of the [district] court." *State v. Walen*, 563 N.W.2d 742, 748 (Minn. 1997) (citation omitted). Illustrative evidence must be relevant, accurate, and helpful to the jury. *State v. Stewart*, 643 N.W.2d 281, 293 (Minn. 2002). First, the text conversation was relevant to L.A.'s credibility because it discussed whether she planned to testify truthfully and whether she discouraged other witnesses from testifying truthfully. Second, L.A. and her sister-in-law both testified that the photos depicted their conversation. Finally, the photos assisted the jury in understanding the conversation which took place through 38 different text messages and jumped back and forth in subject matter. In addition, because L.A. was the only eyewitness to testify, making her credibility particularly critical, the district court did not abuse its discretion by determining that the probative value of the evidence outweighed the risk of unfair prejudice to Haines and that the evidence did not unduly emphasize the text conversation.

Next, we consider whether the district court properly permitted the jury to review the evidence. "If the jury requests review of specific evidence during deliberations, the court may permit review of that evidence after notice to the parties and an opportunity to be heard." Minn. R. Crim. Proc. 26.03, subd. 20(2)(a). The district court has broad discretion regarding what evidence may be reviewed by the jury. *State v. Wembley*, 712 N.W.2d 783, 787 (Minn. App. 2006), *aff'd*, 728 N.W.2d 243 (Minn. 2007). Upon request, the district court should consider three factors: (1) whether the evidence will aid

9

the jury in its deliberations; (2) whether there is a risk of undue prejudice; and (3) whether there is a risk of the jury's improper use. *State v. Everson*, 749 N.W.2d 340, 345 (Minn. 2008). The district court gave due consideration to these factors by permitting the parties to make arguments on the issue, then taking measures to ensure that the photos were not unduly emphasized. The prosecutor displayed each photo briefly in the courtroom, but the district court did not permit copies in the jury room. These measures limited the risk of improper use because the jurors were still required to rely on their recollections when deliberations resumed. And the review was no more prejudicial than the use of the evidence during witness testimony, which was not unduly prejudicial given the strength of the evidence's probative value. Therefore, the district court did not abuse its discretion by admitting, or allowing review of, the photos.

**E.**

Haines next argues that the testimony of Officers Wuorinen and Bauer describing the course of investigation included inadmissible statements. Haines argues that three statements by L.A. were inadmissible hearsay: (1) L.A. said that she would not cooperate because she was afraid that Haines would retaliate against her; (2) after hearing that Haines told police she punched holes in the apartment wall, L.A. said, "Then I guess I did"; and (3) L.A. claimed that she and Haines started arguing when he asked for money to buy more alcohol.

Because Haines did not object to this testimony at trial, we review its admission for plain error. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). To grant relief, "there must be (1) error, (2) that is plain, and (3) affects substantial rights." *State v.*

10

*Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error is plain "when it contravenes a rule, case law, or a standard of conduct, or when it disregards well-established and longstanding legal principles." *State v. Brown*, 792 N.W.2d 815, 823 (Minn. 2011). An error affects substantial rights if "there is a reasonable likelihood that the error substantially affected the verdict." *Id.* at 824. If these three elements are met and the panel finds that reversal is necessary to protect the fairness and integrity of the judicial proceedings, it may grant relief. *Ramey*, 721 N.W.2d at 302.

L.A.'s statement that she did not intend to cooperate and feared retaliation was admissible. A statement describing a present state of mind or intent fits an exception to the hearsay rule. Minn. R. Evid. 803(3). The statement that L.A. did not intend to cooperate is admissible to show that she later acted in conformity with that intent. *See Scott v. Prudential Ins. Co. of Am.*, 203 Minn. 547, 552, 282 N.W. 467, 470 (1938). L.A.'s statement of fear described her mental and emotional state at the time. Because the statement falls within a hearsay exception, the district court did not err.

L.A.'s statement agreeing with Haines that she punched the holes in the wall was not hearsay. Hearsay is an out-of-court statement offered to prove the matter asserted. Minn. R. Evid. 801(c). The state did not offer the statement to prove that L.A. punched the holes. Rather, it offered the statement to prove that L.A.'s explanation changed after hearing what Haines told police. Because the statement was not hearsay, the district court did not err.

L.A.'s statement that Haines got angry with her after she refused to give him money falls within the residual exception to the hearsay rule. Under the residual

11

exception, hearsay may be admitted as substantive evidence if it is sufficiently reliable and "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission . . . ." Minn. R. Evid. 807. The supreme court held that a statement is admissible when there is no confrontation problem, the declarant admits making the statement, the statement is against the declarant's interest, and the statement is consistent with other evidence. *State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn. 1985). In *State v. Plantin*, we held that a victim's prior statements were sufficiently reliable because they were corroborated and against her interest in maintaining a relationship with the defendant, despite her inability to recall making the statements and her conflicting trial testimony. 682 N.W.2d 653, 659 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004).

L.A.'s statement is evidence of a material fact because an argument tends to show that Haines's anger led to the assault, and it is more probative than any other procurable evidence because L.A. was the only eyewitness to testify. There is no confrontation problem because L.A. testified and was subject to cross-examination. She admitted talking to police, although she testified that she can't recall the particular statement, similarly to the declarant in *Plantin*. Also like *Plantin*, the statement was against her interest in continuing a relationship with Haines. In addition, the statement was consistent with other evidence presented by the state and is corroborated by the sister-in-law's testimony that L.A. made the same remark to her. Therefore, the statement serves

12

the general purposes of the evidentiary rules and the best interests of justice and is admissible under the residual exception.

**F.**

Finally, Haines challenges the district court's exclusion of evidence showing a strained relationship between L.A. and her husband's family, including an ongoing custody dispute. Haines argues that the evidence was relevant to witness bias and provided a motive for L.A. to lie about the January incident, and thus he was denied his right to present a complete defense and to confront witnesses.

"A defendant has the constitutional right to present a complete defense" and the right to confront the witnesses against him. *State v. Atkinson*, 774 N.W.2d 584, 589 (Minn. 2009); *State v. Yang*, 774 N.W.2d 539, 553 (Minn. 2009). But the rules of evidence serve as a limit on those rights, preventing the defendant from admitting evidence that would confuse or mislead the jury or that is not relevant. *Atkinson*, 774 N.W.2d at 589.

At trial, defense counsel proffered evidence that there was a pending custody dispute between L.A. and her husband and that her husband had a restraining order against her because of past violent behavior. While Haines's brief suggests that this evidence shows bias, it does not articulate how. L.A.'s in-laws' testimony that she is a victim of domestic assault is unlikely to be any more damaging in a custody dispute than L.A.'s testimony that she flew into a rage, trashed her home, and significantly injured herself, thus the evidence is not relevant. There was, however, other testimony elicited by Haines about potential witness bias. The record reflects that the sister-in-law lived

with L.A.'s husband, L.A. and her husband were divorcing, a court order determined custody of their kids, and the husband was home when the sister-in-law called 911. L.A. also testified that she told her sister-in-law that her husband was "feeding into [the sister-in-law's] head" because of the divorce. Therefore, the district court did not unreasonably limit Haines's ability to question witnesses about bias.

On the other hand, the evidence does tend to show a motive for L.A. to lie about the January incident. However, there is other probative evidence in the record that did not present as great a risk of confusing the jury. L.A. twice testified that she lied about the January incident because her mother-in-law would not help if she knew L.A. had gotten into a bar fight. Therefore, the district court did not prevent Haines from presenting a complete defense because he was able to elicit testimony about L.A.'s motive for lying to her in-laws about the January incident.

## II.

Haines next argues that the district court erred by allowing the state to call L.A. for the sole purpose of impeachment. The state argues that the issue was not raised at trial and therefore is waived. While discussing other issues related to L.A.'s planned testimony, defense counsel said, "[T]hey are putting her on the stand to say that she's a liar so they're effectively putting her up there to impeach her which I don't know that they can necessarily do." Defense counsel did not elaborate on his reasoning for the statement. The district court postponed ruling, but the issue was not revisited. "Generally an appellate court will not consider matters not argued to *and considered by* the district court." *State v. Tayari-Garrett*, 841 N.W.2d 644, 655-56 (Minn. App. 2014)

14

(emphasis added) (citing *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996)), *review denied* (Minn. Mar. 26, 2014). Because the issue was not decided by the district court, it was waived.

Haines identifies seven statements that allegedly violated *State v. Dexter*, but *Dexter* does not apply. 269 N.W.2d 721 (Minn. 1978). In *Dexter*, the supreme court held that a party cannot impeach a recanting witness with prior inconsistent statements if it called the witness solely to admit otherwise inadmissible statements. *Id.* at 721-22. However, L.A. is not a recanting witness. Of the seven statements, L.A. testified that she did not recall making six of them. She did not testify that she never made the statements, except for denying that she ever stated that Haines assaulted her. In addition, L.A. testified that she has a bad memory. Because L.A. did not recant the overwhelming majority of her earlier statements, the district court did not err.

### III.

Haines next argues that the evidence is insufficient to support his conviction. When the jury's determination of guilt rests exclusively on circumstantial evidence, we employ a two-part standard of review to analyze the sufficiency of the evidence. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). First, we identify the circumstances proved, deferring "to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflict[s] with the circumstances proved by the State." *Id.* "[I]n determining the circumstances proved, we consider only those circumstances that are consistent with the verdict." *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013). Next, we examine all reasonable inferences that may be drawn from

the circumstances proved, without deference to the jury's choice between reasonable inferences. *Andersen*, 784 N.W.2d at 329-30. To sustain a conviction based on circumstantial evidence, all such reasonable inferences must be "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 330. "We review the circumstantial evidence not as isolated facts, but as a whole." *Silvernail*, 831 N.W.2d at 599. "[I]nconsistencies in the state's case or possibilities of innocence do not require reversal of a jury verdict so long as the evidence taken as a whole makes such theories seem unreasonable." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008). Accordingly, "mere conjecture" will not overturn a conviction that rests on circumstantial evidence. *Andersen*, 784 N.W.2d at 330 (quotation omitted).

Viewed in the light most favorable to the verdict, the evidence proves the following circumstances: on May 17, 2013, L.A. and Haines were home alone; L.A. suffered injuries that night, including multiple bruises on her legs, chest, and abdomen; and she suffered a laceration on her wrist.

Haines argues that the state failed to prove that L.A. did not injure herself because the doctor testified that her injuries were consistent with self-infliction. However, the doctor actually testified that L.A.'s injuries were consistent with assault, and then he testified that the leg bruises and the wrist injury each could have been self-inflicted. Finally, he confirmed that he had earlier testified that each injury could be self-inflicted. The doctor did not testify that L.A.'s other injuries, which were not specifically asked about, were consistent with self-infliction, like the chest and abdomen bruises. He also did not testify that the pattern of injuries considered as a whole was consistent with self-

16

infliction. Therefore, we must assume that the jury found that L.A. did not injure herself and rejected the conflicting evidence.

Having identified the circumstances proved, we must next examine all reasonable inferences that may be drawn from them, giving no deference to the jury's choice between reasonable inferences. Based on the circumstances proved, it is reasonable to infer that Haines, the only other person present, assaulted L.A and caused her injuries. Given that the jury clearly rejected evidence that L.A. injured herself, it is not reasonable to infer that anyone other than Haines was the source of the injuries. Therefore, Haines is not entitled to relief.

**IV.**

Haines also argues that the prosecutor committed misconduct by eliciting inadmissible testimony, identifying defense counsel to the jury as a public defender, and inflaming the passions of the jury.

We "will reverse a conviction due to prosecutorial misconduct at trial only if the misconduct, 'when considered in light of the whole trial, impaired the defendant's right to a fair trial.'" *State v. Ahmed*, 708 N.W.2d 574, 583 (Minn. App. 2006) (quoting *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003)). "Reversal is required for unusually serious misconduct unless it was harmless beyond a reasonable doubt, but reversal is required for less serious misconduct only when it substantially influenced the verdict." *Id.* (citing *State v. Steward*, 645 N.W.2d 115, 121 (Minn. 2002)).

First, Haines argues that the prosecutor elicited improper opinion testimony on ultimate facts by asking the sister-in law if she believed that Haines "had something to do

17

with" L.A.'s injuries and by asking Officer Wuorinen if he believed this was a domestic assault. Haines cites no cases that hold that eliciting such inadmissible testimony amounts to prosecutorial misconduct. The record does not demonstrate a pervasive pattern of improper questioning; rather, questioning of this nature appears to be isolated. Therefore, the conduct was not prosecutorial misconduct.

Second, Haines argues that the prosecutor solicited improper vouching testimony by asking Officer Wuorinen on redirect if it was "pretty important to be honest as a police officer." The district court overruled Haines's objection, then Officer Wuorinen answered that honesty was important. It is proper for the prosecutor to elicit testimony about character traits of truthfulness and honesty if the defense "opens the door." *State v. Maurer*, 491 N.W.2d 661, 662 n.1 (Minn. 1992). Here, the prosecutor's question came after defense counsel cross-examined Officer Wuorinen about why something as important as a change in L.A.'s explanation of what occurred wouldn't be noted in the police reports if it actually happened; thus, the door was opened. In addition, Officer Wuorinen did not testify that he was telling the truth or that he should be believed over another witness. *See State v. Ferguson*, 581 N.W.2d 824, 836 (Minn. 1998) (holding that testimony is not vouching where it does not assert that a witness is telling the truth or should be believed over another). Therefore, the conduct was not prosecutorial misconduct.

Third, Haines argues that the prosecutor improperly identified defense counsel as a public defender. Generally, the prosecutor should not identify defense counsel to the jury as a public defender due to the risk of prejudice. *See State v. Bailey*, 677 N.W.2d 380,

18

404 (Minn. 2004). However, where the error is inadvertent and the prejudicial impact is minimal and speculative, a new trial is not merited. *See State v. Bonn*, 412 N.W.2d 28, 30 (Minn. App. 1987), *review denied* (Minn. Oct. 21, 1987). The district court found that the prosecutor's comment was inadvertent and harmless beyond a reasonable doubt, and we defer to its determination. *See State v. Tate*, 682 N.W.2d 169, 177 (Minn. App. 2004) ("Whether a defendant is entitled to a new trial because of prosecutorial misconduct is within the discretion of the district court, which is in the best position to appraise the effect of any misconduct."), *review denied* (Minn. Sept. 29, 2004).

Finally, Haines argues that the prosecutor inflamed the jury's passions by bringing up broader themes of domestic violence in her closing argument and stating that the state could not choose which cases to pursue. We evaluate the closing argument as a whole, rather than looking at isolated statements. *State v. Jones*, 753 N.W.2d 677, 691 (Minn. 2008). It is permissible for a prosecutor to discuss the "generally tragic nature of domestic abuse" so long as he or she avoids imploring the jury to convict on a basis other than the evidence presented that the defendant committed the crime charged. *State v. Bradford*, 618 N.W.2d 782, 799 (Minn. 2000). Here, the prosecutor argued that the reason L.A. did not leave to get help on May 17 was because "[i]t's not easy to just walk away from a relationship plagued by domestic abuse." The reference to general themes of domestic abuse was tied to the specific facts of the case, and the closing argument as a whole did not argue that the jury should convict for any reason other than that sufficient evidence had been presented to find Haines guilty. In addition, the prosecutor explained her misstatement that the state could not choose its cases in her next sentence when she

19

said that the state prosecutes when it believes it can prove the case beyond a reasonable doubt, regardless of whether the victim chooses to pursue the case. In context, the statement was harmless beyond a reasonable doubt because the prosecutor accurately explained the law immediately after the district court sustained Haines's objection and urged the jury to convict solely on the basis of the evidence. Therefore, there was no prosecutorial misconduct, and, even if there was, it was harmless beyond a reasonable doubt.

In conclusion, the district court's evidentiary errors were harmless, the district court did not err by allowing the state to call L.A. as a witness, sufficient evidence supports Haines's conviction, and the prosecutor did not commit misconduct requiring reversal.

**Affirmed.**