*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0557**

State of Minnesota,
Respondent,

vs.

JaJuan Anthony Reed, Sr.,
Appellant.

**Filed April 4, 2016
Affirmed
Reilly, Judge**

Stearns County District Court
File No. 73-CR-14-7184

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges his felony domestic assault conviction, arguing the district court abused its discretion by admitting witnesses' out-of-court statements as substantive evidence under the residual exception to the hearsay rule. We affirm.

**FACTS**

On August 23, 2014, at approximately 10:00 p.m., E.W. called 911 while appellant, JaJuan Reed, was assaulting her at appellant's mother's residence. Police officers responded within minutes and spoke with E.W. upon arrival in a nearby parking lot. The officers also spoke with two witnesses, K.R., appellant's sister, and S.W., a friend of E.W.

E.W. gave an initial statement to Officer Heim which was not recorded and a later statement to the officer which was recorded. In the recorded statement, E.W. told the officer she had been dating appellant for six years and she tried to leave him that night. He told her that if she left he would "bang-bang" her and shoot himself in the head. She explained when the incident occurred she was lying in bed with S.W. and appellant came in because he wanted to lie down with her. She got up to go to S.W.'s house and appellant started "grabbin' all on [her]" left arm. She pushed him off, and he "balled up his fists." While they were "tusselin' [she] grabbed his shirt." Once she got outside, appellant chased her around a car and she called 911.

K.R. spoke with Officer Braegelmann. The statement was recorded without K.R.'s knowledge. She told the officer that E.W. tried to leave that night because appellant "was actin' crazy." She said appellant "yanked" E.W.'s arm "real hard" and S.W. pulled

2

appellant back to prevent appellant from hitting E.W., ripping appellant's shirt. Appellant followed E.W. out the door and "kept on hit[ting] her," and then E.W. ran by a car and called the police.

S.W. spoke with Officer Graff. The statement was recorded. S.W. told the officer she was sitting on the bed with E.W. when appellant came in the bedroom and told E.W. she was going to "lay by [him]" that night. When E.W. refused and tried to walk away appellant "grabbed" her. E.W. then tried to pull away from him and S.W. "grabbed" appellant and "pushed him away from [E.W.]."

The state charged appellant with felony domestic assault in violation of Minn. Stat. § 609.2242.4. Before trial, the state filed a motion to admit E.W.'s 911 call and E.W.'s statement to Officer Heim as substantive evidence because within weeks of the events E.W. recanted her allegations against appellant. In a thorough and thoughtful written memorandum, the district court carefully explained which hearsay exception applied to each portion of the statement admitted. It admitted the 911 call and E.W.'s initial "statements to the officer immediately after [the officer] arrives on the scene before he asks her for her identification" as excited utterances and admitted E.W.'s statement to the officer "after he asks for her identification, including the transcribed statement" under the residual exception. On the first day of trial the state moved to admit K.R.'s statement to Officer Braegelmann as substantive evidence. The district court admitted the portions of her statement related to the incident on August 23, 2014, under the residual exception.

At trial, E.W. testified that she was no longer in a relationship with appellant, but that she was still in love with him. Her testimony was largely consistent with her recorded

3

statement. However, she testified at trial that she "took [how he was acting] like [being] aggressive but he wasn't [actually being aggressive]." She also said that he didn't threaten her. She acknowledged that she told the officer 1) he threatened her and 2) she was scared for her life; however, she testified she was lying and couldn't remember what she said because she was drunk.

Appellant's sister, K.R., testified at trial that she considered E.W. to be family and that she did not want to testify. She acknowledged she was present at the residence. She remembered that there was "screaming and yelling" and that appellant and E.W. had been drinking. K.R. saw E.W. run outside. She said E.W. and appellant "looked kind of mad," but she did not hear appellant threaten E.W. She remembered talking to the police, but refused to look at her statement while on the stand.

S.W. testified at trial that she considered both E.W. and appellant to be family, and that she did not want to testify. She said appellant had been drinking and that E.W. did not show signs of intoxication. S.W. testified that she could not remember most of what happened, and she did not want to look at her statement to police. She did acknowledge she made the statement and did not believe she lied to the officers. She testified that "if it's on the statement I probably did say it."

After S.W. testified, the state moved to admit her statement to Officer Graff as substantive evidence. The district court admitted the statement under the residual exception.

Appellant was found guilty as charged. This appeal follows.

**D E C I S I O N**

Appellant argues the district court abused its discretion when it admitted E.W., K.R., and S.W.'s statements to the officers as substantive evidence. "Determinations regarding hearsay evidence are largely within the discretion of the trial court." *State v. Whiteside*, 400 N.W.2d 140, 145 (Minn. App. 1987), *review denied* (Minn. Mar. 18, 1987). We review the determination for abuse of discretion, and an appellant must show that the admission of evidence was error and that he was prejudiced as a consequence. *Holt v. State*, 772 N.W.2d 470, 483 (Minn. 2009).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Although hearsay is generally not admissible at trial, Minn. R. Evid. 802, it may be admissible if it is covered by an exception to the hearsay rule. *State v. Robinson*, 699 N.W.2d 790, 794 (Minn. App. 2005), *aff'd*, 718 N.W.2d 400 (Minn. 2006). The residual exception to the hearsay rule provides that a statement with "circumstantial guarantees of trustworthiness," is not excluded by the hearsay rule, if the court determines that: (1) "the statement is offered as evidence of a material fact"; (2) "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts"; and (3) "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Minn. R. Evid. 807.

Appellant argues that the district court abused its discretion by admitting the statements because they were not "particularly reliable." We look to the totality of the circumstances to determine whether a statement has circumstantial guarantees of

5

trustworthiness. *State v. Keeton*, 589 N.W.2d 85, 90 (Minn. 1998). When considering whether a statement is reliable  courts consider factors including whether (1) the declarant was available for confrontation, (2) it is clear that the declarant made the prior statement, (3) the statement is against the declarant's penal interest, and (4) the statement is consistent with all the other evidence presented by the state. *State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn. 1985). In the domestic assault context the third factor encompasses statements perceived to be against a declarant's romantic interest. *State v. Plantin*, 682 N.W.2d 653, 659 (Minn. 2004), *review denied* (Minn. Sept. 29, 2004). The *Ortlepp* factors are nonexclusive. *See State v. Martinez*, 725 N.W.2d 733, 738 (Minn. 2007) (applying a totality of the circumstances analysis).

Appellant asserts "there was no evidence that the statements were against the witnesses' penal or romantic interest." *See Plantin*, 682 N.W.2d at 659 (extending the third *Ortlepp* factor to encompass statements perceived to be against a declarant's romantic interest). Appellant argues *Plantin* is distinguishable because the witness in *Plantin* testified she tried to continue the relationship with the defendant, and in the present case E.W. indicated they were not still in a relationship. However, E.W.'s statements are against her romantic interest because she testified she still loved him. *See State v. Tate*, 682 N.W.2d 169, 176-77 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004) (determining the third *Ortlepp* factor was satisfied when the witness and defendant were in an "'off and on' relationship for two years and . . . she love[d] him"; noting "because [the witness] was hostile to the prosecution and supportive of [the defendant], [her] statement was against her interest").

K.R. is appellant's younger sister, and thus has a close familial relationship with appellant. K.R. and S.W. both considered E.W. to be "like family." At trial, K.R. and S.W. both indicated they did not want to testify and refused to look at their prior statements while on the stand. Both K.R. and S.W. were "clearly hostile" to the prosecution. *See Whiteside*, 400 N.W.2d at 146 (determining it was not an abuse of discretion when a district court admitted prior statements of a witness who was "clearly hostile" to the prosecution).

Appellant also argues "the unsworn statements were not consistent with the State's other evidence because the bulk of the State's case consisted of the unsworn testimony." Appellant asserts a "lack of factual overlap" between the 911 call and E.W.'s recorded statement. In support of the argument, appellant points to the fact that during the 911 call E.W. stated that appellant was "trying to put his hands on her" and "trying to jump her," but in the recorded statement E.W. complained of appellant's threats to kill her, to shoot her in the head, his drinking problem, and his abusive past. While the recorded statement was significantly longer and more detailed than the 911 call, they are consistent. In her recorded statement, E.W. told Officer Heim that appellant started "grabbin' all on [her]" she pushed him off, ran outside and he chased her, and when she was outside she called 911. All of this is consistent with the 911 call where E.W. described appellant hitting her and running away in real time.

E.W.'s recorded statement is largely consistent with E.W.'s initial statement, which was admitted as an excited utterance. Officer Heim testified that during the initial statement "[E.W.] indicated [appellant] had grabbed her by the left arm," and that he "balled up a fist as if he were going to hit her," and that although "[h]e never did [hit her]

7

she thought that he might." During the initial statement, E.W. also told Officer Heim that she was in the bedroom with appellant, and they subsequently went outside where they went around a car and she ran over a couple blocks. All of these facts are consistent with her recorded statement.

Further E.W., K.R., and S.W. all testified at trial in a manner that was largely consistent with, albeit less detailed than, their statements to police. E.W.'s account at trial of the incident acknowledges appellant "grab[bed]" her left arm, that she "snatched away from him," and that she ran outside. Although she testified at trial that she "took [how he was acting] like [being] aggressive but he wasn't," only her perception of the event changed, not the underlying facts.

Here, the witnesses recanting or failing to remember their prior statements are the only significant inconsistencies in the state's evidence. This concern was addressed in a footnote in *Ortlepp*:

> The possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand is indeed real, but we find no difficulty in it. If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court.

*Ortlepp*, 363 N.W.2d at 44 n.1 (quoting *DiCarlo v. United States*, 6 F.2d 364, 368 (2nd Cir. 1925) (Learned Hand, J.), *cert. denied*, 268 U.S. 706, 45 S. Ct. 640 (1925)).

While appellant's argument is limited to the application of the *Ortlepp* factors, the *Ortlepp* factors are nonexclusive and we conduct a totality of the circumstances analysis.

*Martinez*, 725 N.W.2d at 738. Another factor that supports the determination the statements had circumstantial guarantees of trustworthiness is the temporal connection between the statements and the incident described. *See Tate*, 682 N.W.2d at 177 (determining a statement made one day after the incident indicates circumstantial trustworthiness). Here, the statements were made within a few hours of the assault and thus have a temporal connection which favors their trustworthiness. Additionally the statements made soon after the assault occurred were consistent with each other, and it does not appear the victim and witnesses would have had time to fabricate coordinated statements.

In sum, all three witnesses testified at the trial and acknowledged making the statements. The statements were recorded so there was no doubt about what was said. The statements are against E.W., K.R., and S.W.'s personal interests, and K.R. and S.W. were clearly hostile to the state. The statements are generally consistent with the other evidence presented by the state including the 911 call, E.W.'s initial statement, and much of the testimony from E.W., K.R., and S.W. at trial. The statements were made shortly after the assault and are generally consistent with each other. Under the totality of the circumstances, the statements had circumstantial guarantees of trustworthiness. The district court did not abuse its discretion when it admitted the statements under the residual exception.

**Affirmed.**

9