**STATE of Minnesota, Respondent,**

v.

**Gary Lee ROBY, Appellant.**

**No. C8–89–2123.**

Supreme Court of Minnesota.

Nov. 30, 1990.

---

Lawrence W. Pry, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey III, Atty. Gen., Tom Foley, Ramsey County Atty., Darrel C. Hill, Asst. Ramsey County Atty., St. Paul, for respondent.

SIMONETT, Justice.

Defendant-appellant Gary Lee Roby appeals his convictions for murder, both premeditated first degree murder and felony murder during an aggravated robbery. Among other assigned errors, defendant claims that certain evidence should have been suppressed, that certain out-of-court statements were erroneously admitted under the coconspirator hearsay exemption, and that the out-of-court statements were admitted in violation of the confrontation clause.  We affirm.

On May 22, 1989, in an upper level duplex apartment in St. Paul, a young woman, Marlizza McIntyre, was shot and killed. Present in the apartment at the time were the defendant, Gary Roby, and his two brothers, James and John;  also present were Lillian Dunn, Kenneth Fisher, Katie Bell, LaSheryl Yearby, and Sheila Larson.

The victim was killed by a revolver shot to the back of her head while she was being held face down on the kitchen floor and being robbed of her jewelry.  Two shots were fired;  the first bullet lodged in the floor, the second entered the victim's head.  Gary Roby's defense was that Lillian Dunn, not he, shot the victim and that Dunn alone determined to rob and kill McIntyre.  There was eyewitness testimony, however, that defendant was straddling the victim's body, shot the victim in the head, and took a necklace from the victim's neck and cash from inside her bra.  Neither defendant nor Lillian Dunn testified at the trial.  Other facts will be given as the issues are discussed.

*The Payton suppression issue*

When arrested, defendant was found to have the murder victim's necklace.  After his arrest and after being given a *Miranda* warning, defendant made several statements to police officers.  These statements came into evidence at the trial through the testimony of the officers.  In these statements defendant gave conflicting stories, including, however, admitting he had his hand on the gun when the first shot was

fired, that he had sold Lillian Dunn the revolver used in the killing, and that he believed Dunn would rob the victim to pay for the revolver.

Acting on information from Kenneth Fisher who said he saw defendant Roby shoot McIntyre, the police, without a warrant, arrested defendant at the duplex where he lived. Defendant now claims his arrest involved a nonconsensual, nonexigent entry into his home, and, therefore, the victim's necklace and defendant's out-of-court statements to the police must be suppressed. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The state argues we should construe our state constitution to follow *New York v. Harris*, — U.S. —, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), which recently held that the Fourth Amendment does not require suppression of statements made by a suspect after receiving a *Miranda* warning subsequent to an unlawful, warrantless, domiciliary arrest.

■ We need not decide if we would follow *Harris*. It is enough here that the *Payton* issue was never raised in the court below and, consequently, was waived. At the omnibus hearing there was no claim of a warrantless, domiciliary arrest in violation of *Payton*. While defense counsel spoke of "no exigent circumstances" and the lack of a warrant, this was only within the context of her contention that probable cause for arrest was lacking. Only now on appeal does defendant raise the *Payton* issue.[1] We do not "decide issues which are not first addressed by the trial court and are raised for the first time on appeal even if the issues involve constitutional questions regarding criminal procedure." *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn. 1989).

*Coconspirator hearsay exemption*

At trial, over defense objections, witnesses LaSheryl Yearby and Alicia Jordon testified that 1 or 2 weeks before the murder Lillian Dunn said that she needed to obtain bullets for a gun because someone was bothering her and something needed to be done right away. In addition, Alicia Jordon testified that just before the homicide and shortly after Lillian Dunn had met privately with defendant Gary Roby at the bottom of the stairway at the duplex, Lillian Dunn said to Jordon and Katie Bell, "Did Gary do it yet? I can't do it."

The trial court admitted Lillian Dunn's out-of-court statements under the coconspirator exemption to the hearsay rule, which says a statement is not hearsay if offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of a conspiracy." Minn.R.Evid. 801(d)(2)(E) (1989).

The trial court found that the state, as the proponent of the hearsay statements, had established a prima facie case of conspiracy between Lillian Dunn and defendant Gary Roby to rob and kill the victim McIntyre, and that this prima facie case was made with evidence independent of the hearsay statements themselves. Thus Lillian Dunn's out-of-court statements were admissible against her coconspirator, defendant Gary Roby. This was the proper test for admissibility under the coconspirator exemption at the time this case was tried. *State v. Thompson*, 273 Minn. 1, 16, 139 N.W.2d 490, 503, *cert. denied sub nom. Thompson v. Minnesota*, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966); *State v. Daniels*, 380 N.W.2d 777, 784 (1986); *State v. Black*, 291 N.W.2d 208 (Minn.1980); Minn.R.Evid. 801(d)(2)(E) (1989) and advisory committee comments thereto.[2]

---

1. Oddly enough, the record is unclear where defendant was when he was arrested, *i.e.*, whether he was inside or outside the duplex, and the parties spend some time arguing who should have produced this evidence. If defendant had chosen to raise the *Payton* issue in the omnibus hearing or at the trial, undoubtedly the record would then have been clarified.

2. Since defendant's trial, Minn.R.Evid. 801(d)(2)(E) has been amended, effective January 1, 1990, to follow in part *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Our rule now requires a preponderance of the evidence to show a conspiracy and, further, allows consideration of the hearsay statement, but precludes the declarant's statement by itself from establishing the conspiracy.

■ The trial court's findings are amply sustained by independent evidence. It was shown that defendant admitted giving Lillian Dunn the eventual murder weapon about a week before the shooting, that defendant met with Dunn on the duplex stairs just prior to the shooting, and that defendant had admitted he understood Dunn would rob the victim McIntyre. In further corroboration, witnesses testified to seeing Dunn help defendant hold the victim down on the floor while the victim was being robbed and shot. Defendant also admitted he helped strip the victim of her jewelry. The trial court further found that a reasonable basis existed for concluding that the statements furthered the conspiracy to rob and (or) kill McIntyre, citing the testimony of the interrogating officers and witness Fisher, and testimony from the grand jury proceedings. The trial court's rulings were supported by adequate evidence and were within its sound discretion. *State v. Flores,* 418 N.W.2d 150, 158 (Minn. 1988).

### The confrontation clause issue

Even if Lillian Dunn's out-of-court statements are admissible under the coconspirator exemption, defendant Roby contends admissibility of the statements violates his constitutional right to confront witnesses against him. U.S. Const. amend. VI; Minn. Const. art. 1, § 6. We disagree.

■ We apply a two-step analysis to determine if a hearsay exception violates the confrontation clause: (1) Is admissibility of the out-of-court statement necessary? and (2) Does the statement bear significant indicia of reliability? *State v. Hansen,* 312 N.W.2d 96, 102 (Minn.1981); *State v. Daniels,* 380 N.W.2d 777 (Minn.1986). The first step is admittedly met here because Lillian Dunn asserted her Fifth Amendment right not to testify. It is the second step, the requirement of reliability, that is in dispute.

In *Daniels,* we said that the reliability of hearsay statements can be inferred if they come in under a hearsay exception that is "firmly rooted." 380 N.W.2d at 785, *citing Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Recent-

ly, in *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the United States Supreme Court held that the coconspirator exemption qualified as a "firmly rooted" hearsay exception for purposes of the federal confrontation clause. Under *Bourjaily,* therefore, no further inquiry into the reliability of the statements is needed to satisfy the federal confrontation clause once the hearsay statements fulfill, as they do here, the requirements of the coconspirator exemption. *Id.* at 183, 107 S.Ct. at 2782–2783.

The state urges us to adopt the *Bourjaily* approach to determine whether Dunn's statements are reliable for purposes of the confrontation clause of our state constitution. We see no need to reach this question because we find the statements to be reliable without depending on the legitimacy of the coconspirator exemption itself to provide an inference of reliability.

■ Factors relevant to determining reliability include: (1) whether the context of the statements and the persons to whom they were made suggest that they were reliable; (2) whether the declarant had a motive for lying or problems with memory; and (3) whether the declarant had personal knowledge of the identity and role of the participants in the crime. *United States v. Massa,* 740 F.2d 629, 639 (8th Cir.1984), *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985).

■ Factors one and three are easily satisfied in this case. The first out-of-court statements were made about a week before the homicide, at the residence where the homicide occurred, and were heard by two individuals, Yearby and Jordon. The second statement was made at the same residence minutes before the homicide and was heard by Jordon and Bell. The statements also appear to have been made on firsthand knowledge. As to factor two, we are persuaded, particularly in view of the corroborating testimony of Kenneth Fisher, that Lillian Dunn's statements to Jordon and Bell moments before the shooting were not exculpatory in nature.

■ In short, we find the evidence establishes Dunn's out-of-court statements to possess the requisite reliability for confrontation clause purposes under our state constitution without reliance on any possible inference of reliability which might obtain to statements falling under the coconspirator exemption. Even if admission of the statements were thought to be constitutional error, any such error in this case would be harmless beyond a reasonable doubt; the remaining evidence here is overwhelmingly persuasive of defendant's guilt. *Daniels*, 380 N.W.2d at 787, *citing State v. Shotley*, 305 Minn. 384, 387, 233 N.W.2d 755, 758 (1975).

*Other issues*

In a pro se brief defendant Roby claims that he was denied effective assistance of counsel; that the prosecution knowingly used false and perjured testimony; and that the police officers violated his due process rights by destroying their handwritten interview notes after using them to prepare their official reports on the interviews.

We find no merit to any of these claims. The issue of destruction of police notes, we observe, is really not before us; the issue was not raised below and was waived. For that matter, there is no showing that defendant's case was in any way prejudiced by the destruction of the notes. *See, generally, California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984). *See also State v. Renier*, 373 N.W.2d 282, 287 (Minn.1985).

Affirmed.