**STATE of Minnesota, Respondent,**

v.

**Earl WEMBLEY, Appellant.**

No. A05–245.

Supreme Court of Minnesota.

March 8, 2007.

Marie Wolf, Asst. Public Defender, Office of State Public Defender, for appellant.

Mike Hatch, Atty. Gen., St. Paul, Amy Klobuchar, Hennepin County Atty., David C. Brown, Asst. County Atty., for respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

A jury found Earl Wembley guilty of first-degree criminal sexual conduct. The district court admitted into evidence a videotaped interview of the victim and re-played the videotape for the jury during deliberations without Wembley present. Wembley argues that the replay without his presence constituted reversible error. The court of appeals held that there was no error. *State v. Wembley,* 712 N.W.2d 783, 789 (Minn.App.2006). We granted Wembley's petition for review and affirm.

Appellant Earl Wembley and M.C. lived together for periods between 1989 and 1996, and had two daughters together, one of whom is the victim in this case, K.C. After Wembley and M.C. broke off their relationship, K.C. would periodically visit Wembley at his home. In May 2004, K.C. (then 12 years old) visited Wembley on a day when no one else was present, and K.C. later testified at trial that Wembly sexually assaulted her during that visit.

Approximately a month later, M.C. learned what had happened to K.C. and authorities were notified. Detective Kent Nielsen arranged for K.C. to be interviewed by staff at CornerHouse, a child advocacy center that often interviews children who are alleged victims of sexual abuse. CornerHouse interviews children referred from law enforcement or child protection when there is an active investigation occurring. Pursuant to standard practice, law enforcement and a county attorney observed CornerHouse's interview with K.C. on closed-circuit television as it was occurring, and the interview was also videotaped.

The state charged Wembley with first-degree criminal sexual conduct, in violation of Minn.Stat. § 609.342, subd. 1(a) (2006). At trial, the state played the videotape of K.C.'s CornerHouse interview after the interview tape had been admitted into evidence.

Prior to jury deliberations, counsel for both the state and the defense asked the district court to consider the appropriateness of allowing the jury to take the CornerHouse interview videotape to the jury room with the other exhibits. The state asserted that because the tape was "in the nature of testimony," other courts have required the jury to seek permission of the court and have a court official present during replay. In response, defense counsel asserted that "the tape was received into evidence, and if the Court's not inclined to send it back to the jury room, I would just request that the Court make it clear to [the jury] that it is an exhibit in the case and should they want to see it, it would be available for their review." The court agreed with the state that the tape should not go to the jury room and decided to hear argument from both parties if the jury requested to review the videotape during the course of its deliberations.

During deliberations, the jury sent a note to the court requesting permission to review the tape. The record reflects that an "off-the-record" discussion was held, presumably regarding the jury's request. The jury was then brought into the courtroom, and in the presence of counsel and Wembley, the district court granted the

jury's request to review the tape with the following instructions:

> I want you to review the video in open court here. But don't discuss anything until you get back in the jury room. And I'm going to play the entire videotape. And remember, please don't have any discussions about it until you get back and you deliberate in the jury room. * * * [W]e're all going to leave, and then the court deputies will be with you and [the law clerk] while the tape plays.

Wembley neither objected to the replay of the tape nor objected to his absence from the courtroom during the replay. After viewing the videotape and returning to deliberations, the jury found Wembley guilty, and the district court sentenced him to 144 months in prison.

Wembley's sole issue on appeal is whether the district court committed reversible error by replaying the videotape of the victim's CornerHouse interview for the jury off the record and without the presence of the defendant and the district court. Wembley argues the court's procedure for the replay of the tape violated his right to be present at every stage of the trial. He also argues that videotape interviews of alleged victims are inherently prejudicial, and the district court's procedure for the replay in this case did not adequately protect Wembley from the risk of prejudice.

▪ We ordinarily do not decide issues that were not first addressed by the district court and are raised for the first time on appeal. *State v. Roby*, 463 N.W.2d 506, 508 (Minn.1990). We consider those issues waived. *Id.* But we may choose to hear an issue for the first time on appeal if the interests of justice require. *State v. Basting*, 572 N.W.2d 281, 286 (Minn.1997).

▪ Here we have more than a simple case of failure to act or attorney inattention; the record reflects that Wembley not only failed to object, but before deliberations began, defense counsel affirmatively requested that the jury have access to the tape in case the jurors wished to review it. Indeed, defense counsel's preference was for the tape to go with the jury into the jury room during deliberations. The record indicates that Wembley had a tactical reason for the jury to review the tape. During closing argument, defense counsel asserted that there was an inconsistency between K.C.'s interview at CornerHouse and her testimony at trial. Referencing that perceived inconsistency, counsel stated to the jury: "That's a pretty big detail, and I think that's something you all should consider when you're assessing the credibility of the children in this case, because she has not been completely consistent when she talks about what happened."

▪ Based on this record, we conclude that Wembley waived any right he may have had to challenge the district court's procedure for replaying the tape for the jury or to argue that his presence was required.[1] The interests of justice do not

---

1. Furthermore, it is not clear that a replay of a videotaped interview of a witness, admitted into evidence, during jury deliberations is a stage of trial that requires the defendant's presence for purposes of Minn. R.Crim. P. 26.03, subd. 1(1). Jury deliberations are conducted without the parties or the district court present, and ordinarily a jury is permitted to take exhibits admitted into evidence to the jury room. Minn. R.Crim. P. 26.03, subd. 19(1). During deliberations, if the jury requests a review of evidence to which it does not already have access, Minn. R.Crim. P. 26.03, subd. 19(2)(1), grants the district court authority to comply with the jury's request. If the court chooses to comply, the court has broad discretion in controlling the jury's review of the evidence in order to minimize prejudice. *State v. Kraushaar*, 470 N.W.2d 509, 514–15 (Minn.1991). We have stated

require us to address this issue, where Wembley consented to and actively encouraged the court to allow the jury to see the tape again.

Affirmed.

that it is preferable for district courts to replay potentially prejudicial videotaped interviews admitted into evidence in the courtroom rather than allowing the jury to replay such tapes in the jury room, but we did not address in *Kraushaar* whether the parties should be present during the replay. *Id.* at 516.

Wembley makes a public policy argument with his claim that video replays are highly prejudicial because such replays are tantamount to allowing a witness to enter the jury room and repeat her testimony. Wembley argues that the prejudicial effect may be minimized by conducting the replay in open court with the parties present and under the supervision of the district court. But these suggestions must be balanced against the broader policy that juries are typically allowed to further consider exhibits in the jury room during deliberations without supervision by the district court. While we do not endorse the procedures used by the district court to replay the video tape, because we conclude that Wembley waived this issue on appeal, we do not decide whether additional safeguards should be mandatory. And as to additional safeguards, we invite suggestions from the Supreme Court Advisory Committee on the Rules of Criminal Procedure.