*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1012**

State of Minnesota,
Respondent,

vs.

Patrick William Carey,
Appellant.

**Filed December 22, 2014
Affirmed; motion granted
Chutich, Judge**

Ramsey County District Court
File No. 62-K6-04-002425

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Stauber, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Patrick Carey appeals the district court's decision to revoke his probation and execute his prison sentence, arguing that the evidence was insufficient to

show that the need for confinement outweighed the policies favoring probation. Carey also moves this court to accept his late pro se supplemental brief, in which he argues that he was denied effective assistance of counsel at the revocation hearing and that a condition of probation was impermissibly vague. We grant this motion and consider Carey's additional arguments. Because sufficient evidence exists to support the revocation, and Carey's pro se arguments lack merit, we affirm.

## FACTS

In 2004, appellant Patrick Carey pleaded guilty to two counts of first-degree criminal sexual conduct. The convictions stem from multiple sexual acts that Carey committed against two of his nieces when they were minors. Carey was sentenced to 144 months in prison for the first count, which he served. The district court also imposed but stayed a consecutive 86-month sentence for the second count. This sentence was stayed for 30 years and Carey's probation began immediately. A special condition of probation stated that Carey was to have no contact with any minors "without the written permission of [his] probation officer."

In March 2014, Carey's probation officer filed a recommendation with the district court to revoke the stay of execution because Carey had contact with minors. Later in March, the district court held a probation revocation hearing.

The probation officer detailed the violation. Carey told his supervised-release agent that he had contacts with his friends' minor children, including their 12-year-old daughter. The children's father confirmed that Carey was in contact with the children on

many occasions. The father told the supervised-release agent that he believed Carey could have supervised contact with the children.

The probation officer testified that he had directed Carey, on six separate occasions, not to have contact with minors. On one of those occasions, the probation officer specifically told Carey that before he could have contact with minors, (1) Carey would need to be in treatment; (2) Carey's sex-offender therapist, the probation officer's supervisor, and a child protection official all would need to approve the contact; and (3) any supervisor of the contact would have to be agent-approved and have completed a certified chaperone class. The probation officer further testified that although minors may be present in public places, Carey needed to follow a specific process to have contact with minors, and that Carey was never told he could have either direct or indirect contact with minors.

The probation officer also testified that Carey's intentional and deceptive actions were aggravating factors supporting commitment. He said that Carey was in the process of building a trusting relationship with the family, and, in many cases of sexual assault against minors, a grooming period occurs. The probation officer noted that the 12-year-old daughter is in Carey's "victim pool," given that his previous convictions stem from offenses committed against girls similar in age. The probation officer also stated that the contacts occurred on many occasions but because they were never reported, the extent of Carey's relationship with the minors could not be determined. Finally, the probation officer testified that Carey placed himself in this situation knowing that it violated his probation and that he believed Carey "present[ed] a high risk to community safety."

3

Carey claimed that his understanding of the probation officer's instructions was that he was not to *interact* with any children. He said that the children's parents were always around and that if the children tried to engage him in conversation, he would walk away. But Carey also admitted that, although he told his probation officer that children lived at his friends' house, he did not mention that he was there. Carey further admitted that he never sought permission from his probation officer to have contact with the children.

The district court revoked the stay of execution, finding that confinement was necessary to protect the public from further criminal activity; treatment would be most effectively provided in prison; and it would unduly depreciate the seriousness of the violation if probation were not revoked. The district court added:

> I find it disturbing that you are nuancing words about interaction versus contact. I had an opportunity to go back and review [the sentencing judge's] original sentence. And I'm quoting from her original sentence that she said to you directly is, "You are not to have any contact with any minors -- that means anybody under the age of 18 -- without written permission of your probation officer."
>
> You admitted to me this morning that you did not obtain written permission from your probation officer prior to having contact with the minor children of your friends.
>
> It is very disturbing to me that you are now trying to . . . nuance words or something and say interaction isn't contact. Contact is contact.
>
> And if you didn't understand what "contact" meant before you saw those children, you should have talked with [your probation officer] or someone else in the probation office and clarified what exactly does "contact" mean.

The district court executed the 86-month sentence. This appeal followed.

4

## DECISION

## I. Probation Revocation

Carey first argues that the evidence was insufficient to support a finding that the need for confinement outweighed the policies favoring probation. In support of his argument, he notes that he informed his probation officer that he had been around children and his mistaken belief that he was not violating the terms of his probation. He also argues that the district court had other meaningful sanctions instead of executing the sentence. The state counters, and we agree, that sufficient evidence exists to support the district court's decision.

### A. *Standard of Review and the* Austin *Factors*

If an offender violates probation, a district court may continue probation, impose intermediate sanctions, or revoke probation and execute the stayed sentence. Minn. Stat. § 609.14, subd. 3(2) (2012). A district court's determination that sufficient evidence exists to revoke probation is reviewed for abuse of discretion. *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980).

In *Austin*, the supreme court set forth the three findings a district court must make before revoking probation: (1) the specific condition or conditions of probation that were violated; (2) the violation was intentional or inexcusable; and (3) the need for confinement outweighs the policies favoring probation. *Id.* at 250.

Regarding the third factor, the *Austin* court noted that "policy considerations may require that probation not be revoked even though the facts may allow it." *Id.* A court should balance the probationer's interest in freedom and the state's interest in ensuring

5

his rehabilitation and the public safety.  *Id.*  Revocation should not be a reflexive reaction and it requires a showing that "the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity."  *Id.* at 251 (quotation omitted).

To balance the probationer's needs with the public's, the *Austin* court set forth the following considerations:

> Grounds for and alternatives to probation revocation.
>
> (a) Violation of a condition is both a necessary and a sufficient ground for the revocation of probation.  Revocation followed by imprisonment should not be the disposition, however, unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
>
>> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>>
>> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>>
>> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* (quoting A.B.A. Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970)).  A district court need only find one of the listed grounds to support revocation. *See id.*

### B.     *Carey's Revocation*

The district court stated on the record that it found confinement necessary to protect the public, Carey needed correctional treatment which could most effectively be provided in confinement, and it would unduly depreciate the seriousness of the violation if probation was not revoked.  Sufficient evidence exists to support these findings.

6

Testimony established that Carey was told many times about the procedure that he must use before having intentional contact with children. The probation officer also clarified that although Carey may have encountered minors in public places, he was never told that he could have either direct or indirect contact with them. The district court noted the clarity of the original sentence: Carey was not to have contact with any minor without written permission of his probation officer. The district court further stated its concern with Carey's attempt to create a nuanced difference between "interaction" and "contact."

Furthermore, Carey admitted that although he informed his supervised-release agent that children were at his friends' house, he did not tell the agent that he visited the home. And as the probation officer noted, one of the children was a girl similar in age to Carey's victims. This evidence supports the district court's finding that the need for confinement outweighed the policies against probation, and therefore it properly exercised its discretion in revoking Carey's probation.

## II.    Carey's Pro Se Arguments

Carey also moves to submit a pro se supplemental brief that raises additional issues. We grant this motion and address Carey's claims in turn.

Carey first claims that he received ineffective assistance of counsel at his probation revocation hearing. To prevail on a claim of ineffective assistance of counsel, an appellant must "demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for his counsel's unprofessional error, the outcome would have been different." *Leake v. State*,

767 N.W.2d 5, 10 (Minn. 2009) (citing *Strickland v. Washington*, 466 U.S. 687-88, 104 S. Ct. 2052, 2064-65 (1984)).  Both prongs need not be analyzed if one is determinative. *Id.*

Carey's claim fails because he cannot show how the outcome of the hearing would have been any different but for his counsel's performance.  Carey's argument focuses on his claim that he did not interact with the children at his friends' house.  But this exact claim was rejected by the district court, which stated how disturbed it was with Carey's attempt to "nuance" a difference between "interaction" and "contact."  Because Carey cannot establish that but for his counsel's performance, the outcome would be different, this claim fails.

Finally, Carey argues for the first time on appeal that the probation condition forbidding contact with minors is vague and violates his rights to due process.  Issues not raised in the district court but raised for the first time on appeal are considered waived. *State v. Roby*, 463 N.W.2d 506, 508 (Minn. 1990).  Even if we were to consider the merits of this contention, however, this argument fails. *See State v. Schwartz*, 628 N.W.2d 134, 141-42 & n.4 (Minn. 2001) (rejecting argument that a no-contact with minors probation condition is unreasonably restrictive and vague when a defendant has that condition explained).  Because Carey's pro se arguments are unavailing, we affirm.

**Affirmed; motion granted.**