*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0871**

State of Minnesota,
Respondent,

vs.

Francisco Cleofus Mountain,
Appellant

**Filed June 22, 2015
Affirmed
Worke, Judge**

Dakota County District Court
File No. 19HA-CR-13-1339

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget K. Sabo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Stacy St. George, Assistant County Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Worke, Judge; and Smith, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his first-degree criminal-sexual-conduct conviction, arguing that (1) evidence that the victim was physically helpless at the time of the sexual

encounter was insufficient, (2) the district court abused its discretion by admitting graphic photographs, and (3) the district court abused its discretion by imposing the statutory maximum sentence. We affirm.

**FACTS**

On April 27, 2013, at approximately 3:29 a.m., officers and paramedics responded to a call for medical attention. Appellant Francisco Cleofus Mountain reported that he and his girlfriend, M.B., had a consensual sexual encounter and fell asleep on the couch. When Mountain woke, he noticed blood and called 911. There were pools of bright red blood on the floor, a chair, and the couch, but no other indication that a struggle took place.

M.B. was found covered in blood, actively bleeding, and with a bloody towel around her waist. Paramedics had difficulty detecting the cause of M.B.'s injury because significant amounts of blood and large amounts of clots were coming from her vaginal area. M.B. had slurred speech, poor balance, and was emitting an odor of an alcoholic beverage.

In the ambulance, paramedics observed that M.B. was impaired, incoherent, did not remember much about the evening, was not alert or oriented, and did not "know what was going on" or "have a grasp on reality." She made statements about "having her brother . . . kick her boyfriend's a--," and that "he will never do this again."

When M.B. arrived at the emergency room, she was not forthright with the emergency room physician. Initially, M.B. reported that she had a fight with her boyfriend and complained of foot and back pain. M.B. denied having sexual intercourse

2

and could not explain the significant vaginal bleeding. Later, M.B. stated that she had been kicked in her vaginal area. M.B.'s alcohol content (AC) measured .31.

M.B. underwent surgery to mend a five centimeter laceration on the left wall of her vagina, an eight centimeter laceration on the right wall of her vagina, and three external tears. M.B. had a blood transfusion, which is rare in a vaginal bleeding case. The emergency room physician did not believe that M.B.'s injury could have been caused by a penis or a finger "unless the finger had a knife on the end of it." He also did not believe that M.B.'s injury could have been caused by a consensual act, such as fisting[1], based on the extent of the trauma and amount of bleeding. The OB/GYN who performed M.B.'s surgery observed that M.B. was languid and did not remember things. The surgeon, likewise, did not believe that fisting caused the lacerations in M.B.'s vagina because they were caused by "something sharp, something rigid, too large for the vagina or . . . excessive force."

Following her surgery, M.B. told a detective that she did not remember what happened. She stated: "I kinda [sic] remember falling to the ground and that's all I remember." M.B. told the detective that Mountain has been abusive, has hit her, and "tried to put his hand up her [vagina] and tear her."

Mountain was charged with first-degree criminal sexual conduct, using force or coercion to accomplish sexual penetration and causing injury; first-degree criminal sexual conduct, engaging in sexual penetration with a person who is physically helpless and

---

[1] During trial, the word "fisting" was used to describe the sexual activity of inserting a hand into the vaginal cavity.

causing injury; first-degree assault, infliction of great bodily harm; terroristic threats; domestic assault; and pattern of stalking conduct.

M.B. testified at Mountain's jury trial that she was not feeling well on April 27, and had taken DayQuil. Around 6:30 p.m., M.B. and Mountain began drinking vodka, and spent the next six hours drinking alcohol and hanging out. M.B. became extremely intoxicated. She recalled being on her couch making out with Mountain, including some form of vaginal penetration, and the next thing she remembered was waking up in the hospital. But M.B. also testified that a few weeks before Mountain's trial, she told the defense investigator that she and Mountain had engaged in a consensual sexual act of fisting. M.B. testified that during this consensual act, she lost her balance and fell off of him while his hand was in her vagina. M.B. testified that it was embarrassing to be injured in this manner, so she did not feel comfortable telling anyone. M.B. also testified that she did not want Mountain to get into trouble.

The jury found Mountain not guilty of all counts except for first-degree criminal sexual conduct, engaging in sexual penetration with a person who is physically helpless and causing injury to that person. The district court sentenced Mountain to 360 months in prison, the top of the presumptive range. This appeal follows.

## DECISION

Mountain first argues that the evidence was insufficient to show that M.B. was physically helpless. We review a claim of insufficient evidence to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We will

4

not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

When a jury considered circumstantial evidence, we apply a heightened standard of review. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013). This standard includes a two-step analysis to determine whether the evidence was sufficient to support the conviction. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). First, we "identify the circumstances proved." *Id.* Then we "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved," and "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations and brackets omitted). The evidence is considered as a whole, not each piece in isolation. *State v. Andersen*, 784 N.W.2d 320, 332 (Minn. 2010).

It is not this court's role to interpret the evidence, *State v. Stein*, 776 N.W.2d 709, 714 (Minn. 2010), because the jury is in the best position to evaluate the evidence and has already done so. *See Moore*, 846 N.W.2d at 88; *see State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980) (stating that weighing credibility of witnesses is the exclusive function of the jury). Accordingly, when determining the circumstances proved, this court "assume[s] that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict." *Moore*, 846 N.W.2d at 88. "There may well be testimony on behalf of the defendant as to inconsistent facts and circumstances, not conclusively proved, and

5

which the jury may have a right to and do reject as not proved." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008) (quotation omitted).

A person is guilty of first-degree criminal sexual conduct when he engages in sexual penetration with an individual, whom he "knows or has reason to know" is "mentally impaired, mentally incapacitated, or physically helpless," and causes that individual personal injury. Minn. Stat. § 609.342, subd. 1(e)(ii) (2012). Mountain argues that M.B. was not physically helpless.

A person is physically helpless if she "is (a) asleep or not conscious, (b) unable to withhold consent or to withdraw consent because of a physical condition, or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor." Minn. Stat. § 609.341, subd. 9 (2012). Consent is present when "words or overt actions . . . indicat[e] a freely given present agreement to perform a particular sexual act with the actor. Consent does not mean . . . that the complainant failed to resist a particular sexual act." *Id.*, subd. 4(a) (2012). A person who is physically helpless cannot consent to a sexual act. *Id.*, subd. 4(b) (2012).

The circumstances proved include: (1) M.B. had taken DayQuil because she was not feeling well; (2) M.B. drank alcoholic beverages for approximately six hours; (3) M.B. was extremely intoxicated; (4) M.B. had slurred speech, poor balance, was emitting an odor of an alcoholic beverage, did not remember a lot, and did not "seem to have a grasp on reality"; (5) M.B. was impaired, incoherent at times, not alert or oriented, and "was unable to really know what was going on"; (6) M.B. could not explain the bleeding from her vagina to the emergency room physician and denied having sexual

6

intercourse; (7) M.B. had an AC of .31; (8) M.B. was languid and unable to remember things; (9) M.B. remembered making out with Mountain on the couch and then waking up in the hospital; and (10) M.B. told a detective that she did not remember what happened to her.

These circumstances show that M.B. was physically helpless, i.e., "(a) asleep or not conscious, (b) unable to withhold consent or to withdraw consent because of a physical condition, or (c) unable to communicate nonconsent." *Id.*, subd. 9. Additionally, these circumstances show that Mountain knew or should have known M.B.'s condition. *See id.* M.B. and Mountain had been drinking together for six hours. He claims the sexual encounter was consensual, but M.B. did not remember anything after making out with Mountain, and denied having sexual intercourse to the emergency room physician. And she exhibited signs of severe impairment, which undermines a conclusion that she was able to give or withdraw consent.

We must now determine whether the circumstances proved are inconsistent with any rational hypothesis except that of guilt. Mountain claims that M.B. testified that their sexual activity was consensual. But the jury's verdict reflects that they did not believe M.B. Her testimony was inconsistent. She testified that she did not remember what happened, but she told a defense investigator in preparation for Mountain's trial that the sexual activity was consensual. She also testified that she did not want Mountain to get into trouble. The jury was free to evaluate M.B.'s credibility and disregard any of her testimony.

7

Mountain also suggests that the evidence shows that M.B. resisted Mountain and communicated her nonconsent. But if M.B. did not consent, Mountain would have had to use force or coercion to accomplish sexual penetration, and the jury found Mountain not guilty of using force or coercion. Mountain cites to *State v. Montermini*, to support his assertion that circumstances proved may not include circumstances of a charge for which he was acquitted. 819 N.W.2d 447, 461 (Minn. App. 2012). In *Montermini*, the jury found the defendant guilty of third-degree murder, among other charges, but acquitted him of kidnapping charges. *Id.* at 453. The defendant challenged the sufficiency of the evidence supporting the third-degree-murder conviction, arguing that circumstances proved may not include any circumstances underlying the kidnapping charges because the acquittals render these circumstances unproven. *Id.* at 461. But this court stated that "[t]he acquittals here shed no light on which circumstances the jury believed or disbelieved; the acquittals only demonstrate that the jury believed the state failed to establish the elements of kidnapping." *Id.* The kidnapping elements were irrelevant to the elements of third-degree murder: "caus[ing] the death of another by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life." *Id.* at 460.

Here, the acquittals show that the jury was not persuaded that the state established the elements of first-degree criminal sexual conduct, using force or coercion to accomplish sexual penetration and causing injury. Minn. Stat. § 609.342, subd. 1(e)(i) (2012). The jury found Mountain guilty of first-degree criminal sexual conduct, engaging in sexual penetration with an individual, knowing or having reason to know that

8

the person is physically helpless, and causing personal injury. *Id.*, subd. 1(e)(ii). Thus, the jury believed that the state proved the elements of sexual penetration and injury, but failed to prove that Mountain used force or coercion. Unlike *Montermini*, the acquittal sheds light on which circumstances the jury believed or disbelieved. The circumstances proved do not establish that M.B. was capable of communicating nonconsent; therefore, they are not consistent with any rational hypothesis except that of guilt. The evidence was sufficient to support Mountain's conviction.

## *Admission of evidence*

Mountain also argues that the district court should not have admitted graphic photographs of M.B.'s vagina. Mountain's attorney objected to admission of photographs that a sexual assault nurse examiner (SANE) took of M.B.'s injuries, asserting that they were "inflammatory and prejudicial" and failed to aid the jury in understanding M.B.'s injuries. The district court stated that the photographs were "prejudicial" but not "unduly prejudicial," and although "upsetting," admitted them into evidence. This court reviews a district court's evidentiary ruling for abuse of discretion. *State v. Bolstad*, 686 N.W.2d 531, 541 (Minn. 2004).

In general, relevant evidence is admissible. Minn. R. Evid. 402. Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. But relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or by considerations of . . . needless presentation of cumulative evidence." Minn. R. Evid. 403.

9

"Photographs are generally admissible whe[n] they accurately portray anything which is competent for a witness to describe orally, and [when] they are relevant to some material issue." *State v. Durfee*, 322 N.W.2d 778, 785 (Minn. 1982).

In *State v. DeZeler*, the supreme court held that the district court appropriately admitted "photographs showing the horrible condition of [the] decedent's body" because there was no indication that the pictures had been distorted or inaccurately portrayed the subject matter. 230 Minn. 39, 46, 41 N.W.2d 313, 318 (1950). The supreme court noted that a "horrible, revolting, and ghastly" depiction was "an inherent and inseparable part of the facts which were relevant to a full consideration of material issues by the jury." *Id.*, 41 N.W.2d at 318-19. The material issues included "the nature and location of the death wound," the time of death, and the manner in which the body was concealed. *Id.*, 41 N.W.2d at 318; *see also State v. Morton*, 701 N.W.2d 225, 228, 237 (Minn. 2005) (holding that "grisly" photos were relevant to show elements of first-degree and second-degree murder and admissible when medical examiner testified to cause of death and probable killing during sexual assault).

Here, the photographs were relevant to show M.B.'s injuries. Several of the charges included an injury element. The photographs showed the extensive amount of bleeding, a cut in the vaginal wall, and tears in the labia. The photographs, although "upsetting," accurately portrayed the condition of M.B.'s body immediately after the incident. And the SANE testified regarding the relevance of each photograph and the injury it portrayed. *See Durfee*, 322 N.W.2d at 785 (stating that photographs are

generally admissible when they are relevant, an accurate portrayal, and a competent witness describes them).

Mountain asserts that the photographs were not necessary to show the extent of M.B.'s injuries because witnesses testified about M.B.'s excessive blood loss and the surgeon detailed the extent of M.B.'s injuries. But the availability of other means for presenting the evidence does not make admission of the photographs an abuse of discretion. *See State v. Hahn*, 799 N.W.2d 25, 34-35 (Minn. 2011) (concluding that the district court did not abuse its discretion by admitting pornographic photographs even though a witness could have testified to their existence).

Mountain also claims that the photographs were prejudicial and likely affected the outcome of his case. But Mountain was acquitted of first-degree criminal sexual conduct, using force or coercion to accomplish sexual penetration and causing injury; and first-degree assault, infliction of great bodily harm. Mountain's acquittal on these charges tends to show that the jury was not unduly affected by the photographs. *See State v. Young*, 710 N.W.2d 272, 281 (Minn. 2006) (reasoning that jury's acquittal on one count indicated that evidence was not prejudicial).

*Sentence*

Mountain argues that the district court abused its discretion by imposing a sentence at the top of the presumptive range. This court reviews sentences imposed by the district court for an abuse of discretion. *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn. July 20, 2010).

11

A district court must impose the presumptive guidelines sentence absent "identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grids." Minn. Sent. Guidelines 2.D (2012). Sentence ranges in the sentencing guidelines are presumed to be appropriate for the crimes to which they apply. *Id.* "All three numbers in any given cell [on the sentencing guidelines grid] constitute an acceptable sentence." *State v. Jackson*, 749 N.W.2d 353, 359 n.2 (Minn. 2008); *Delk*, 781 N.W.2d at 428 ("[A]ny sentence within the presumptive range for the convicted offense constitutes a presumptive sentence."). A district court does not have to explain its reasons for imposing a presumptive sentence, and we will not interfere with the district court's exercise of discretion when "the record shows the [district] court carefully evaluated all the testimony and information presented before making a determination." *State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. 1985). "[I]t would be a rare case which would warrant reversal of the refusal to depart." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

With Mountain's five criminal-history points, the presumptive guidelines sentence was 306 months in prison, with a range between 260-360 months. The district court sentenced Mountain to 360 months in prison, the top of the range, but a presumptive sentence. Mountain argues that the district court erred by finding that he acted with particular cruelty and that, although the jury did not find that he used a dangerous weapon, the court stated that it believed that he used a hammer that was found at the scene to inflict the injury. Although the district court made these statements, it did not

depart. It imposed a presumptive sentence and was not required to explain its reasons for doing so. *See Van Ruler*, 378 N.W.2d at 80.

Mountain also claims that the district court failed to consider mitigating factors. The state had moved for imposition of the statutory maximum sentence of 30 years and a mandatory sentence under the dangerous-offender statute based on Mountain's two prior qualified convictions for criminal sexual conduct and second-degree assault. The district court stated that it believed that Mountain felt remorse, was concerned about M.B., and wanted to get her medical attention. The court also stated that Mountain was respectful and conducted himself well in court. But the district court concluded that Mountain was a danger to public safety. The district court weighed aggravating and mitigating factors, and imposed a sentence at the top of the presumptive range, which also happens to be the statutory maximum. This is not a rare case that warrants reversal of imposition of a presumptive sentence.

### Pro se claim

In his pro se supplemental brief, Mountain argues that "the jury was impacted by the rip and slice[] in [M.B.'s] dress and the cut bra and [M.B.'s] internal injuries." He claims that no witness described the clothing in the condition they were in when placed into evidence. Mountain's argument is unclear; perhaps he is suggesting that the clothing was intact when collected and subsequently ripped while in the custody of law enforcement. Nonetheless, this claim is deemed waived for lack of briefing. *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (deeming arguments set out in pro se supplemental brief waived because "brief contain[ed] no argument or citation to legal

13

authority in support of the allegations"); *State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) (stating that assignment of error based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection), *aff'd*, 728 N.W.2d 243 (Minn. 2007).

**Affirmed.**