*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2003**

State of Minnesota,
Respondent,

vs.

Pierre Scott Glass,
Appellant.

**Filed December 21, 2015
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-CR-13-9348

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

## U N P U B L I S H E D   O P I N I O N

**SCHELLHAS**, Judge

Appellant challenges his convictions of attempted second-degree murder and crimes committed for the benefit of a gang. We affirm.

# FACTS

In November 2013, a large group of teenagers, including 16-year-old L.H., attended a house party in St. Paul. Around 10 p.m., appellant Pierre Glass and several others arrived. People attending the party identified Glass as an "opp," a gang term for a member of a different gang or "[s]omeone you don't hang with or someone that you don't like." One of the newcomers shouted, "Squad, let's go," and all of the newcomers left the party.

Later, a group of 20 to 30 people, including L.H., 14-year-old D.J., and D.J.'s friends, left the party and walked to a bus stop. A black car with four or five occupants pulled up alongside the group. Loud music emanated from the car, and some of the people in the group began dancing to the song that they heard, which included the sound of gunshots and the lyrics, "Shoot the whole crowd for one specific person."[1] After that part of the song, Glass exited the car and said, "'Ha. Ha. Ha. Y'all ready?'" He then ran toward the group with a gun, firing multiple shots. L.H. ran because he heard Glass say his name and heard gunshots. A bullet hit D.J., who dragged herself to a nearby church parking lot. While D.J.'s friends assisted her, a person approached her and said, "'I'm sorry. We didn't mean to hit you,'" and then ran away. The person later was identified as a member of Hit Squad.

Police arrested Glass, who denied that he was the shooter but admitted that he was at the party and claimed that he walked toward L.H. to fight but fled when he heard gunshots. Respondent State of Minnesota charged Glass with (1) attempted second-degree

---

[1] The state played for the jury a YouTube video of this song; Glass appears in the video alongside identified members of the Hit Squad and Latin Kings gangs.

murder for the benefit of a gang (as to L.H.); (2) attempted second-degree murder (as to L.H.); (3) second-degree assault for the benefit of a gang (as to L.H.); (4) second-degree assault (as to L.H.); (5) attempted second-degree murder for the benefit of a gang (as to D.J.); (6) attempted second-degree murder (as to D.J.); (7) first-degree assault for the benefit of a gang (as to D.J.); (8) first-degree assault (as to D.J.); (9) second-degree assault for the benefit of a gang (as to D.J.); and (10) second-degree assault (as to D.J.). A jury found Glass guilty of all charges, and the district court imposed concurrent sentences of 165 months' imprisonment for attempted second-degree murder for the benefit of a gang (as to L.H.) and 200 months' imprisonment for attempted second-degree murder for the benefit of a gang (as to D.J.).

This appeal follows.

## DECISION

### *Transferred intent*

Glass argues that the doctrine of transferred intent is inapplicable to attempted murder offenses. The state argues that the application of transferred intent is subject to a plain-error analysis because Glass failed to object to the transferred-intent jury instruction that pertained to charges of attempted murder of D.J. Noting that Glass did not object to the instruction, the state argues that we should not entertain Glass's "unpreserved policy argument." "Failure to object to jury instructions before they are given generally constitutes a forfeiture of the right to an appeal based on those instructions." *State v. Vance*, 734 N.W.2d 650, 654 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303, 311–12 (Minn. 2012). "But failure to object will not preclude appellate review if the

instructions constitute plain error affecting substantial rights or an error of fundamental law." *Id.* at 655.

The state also notes correctly that Glass did not brief the issue of plain error. At oral argument, Glass maintained that he is not challenging the transferred-intent jury instructions but is challenging the application of the doctrine of transferred intent to attempted murder as a matter of law. We reject Glass's argument and conduct a plain-error analysis to determine whether the district court erred by instructing the jury on transferred intent regarding the charges of attempted murder of D.J. Under the plain-error standard, "[appellate courts] may review an unobjected-to error only if there is (1) error; (2) that is plain; and (3) that affects substantial rights." *Id.* at 655–56.

Second-degree murder occurs when a person "causes the death of a human being with intent to effect the death of that person or another, but without premeditation." Minn. Stat. § 609.19, subd. 1 (2012). The supreme court has recognized that "Minnesota's homicide statutes . . . incorporate the doctrine of transferred intent." *State v. Cruz-Ramirez*, 771 N.W.2d 497, 507 (Minn. 2009); *see also State v. Sutherlin*, 396 N.W.2d 238, 240 (Minn. 1986) (concluding that evidence was sufficient to prove defendant's intent to kill victim, reasoning in part that first-degree premeditated-murder statute "incorporate[d] the traditional doctrine of 'transferred intent'").

Glass argues that Minnesota Statutes section 609.19, subdivision 1, permits the use of the transferred-intent doctrine for second-degree murder but does not permit the use of the doctrine for attempted murder. To support his argument, Glass cites only one case, *State v. Noble*, in which this court stated in dicta that "[i]t is questionable whether the

4

doctrine of transferred intent applies to attempted murder." 669 N.W.2d 915, 919 (Minn. App. 2003), *review denied* (Minn. Dec. 23, 2003). Subsequent to this court's decision in *Noble*, both the supreme court and this court have affirmed attempted-murder convictions that were based on the doctrine of transferred intent. *See Cruz-Ramirez*, 771 N.W.2d at 501, 506–07 (affirming attempted first-degree murder convictions based on transferred-intent doctrine); *State v. Holliday*, 745 N.W.2d 556, 559, 562–64 (Minn. 2008) (affirming attempted first-degree murder conviction based on transferred-intent doctrine); *State v. Bakdash*, 830 N.W.2d 906, 909–10, 912, 914–15 (Minn. App. 2013) (affirming attempted second-degree murder convictions and rejecting contention that "there can be no transferred intent from the attempted murder of a specific victim"), *review denied* (Minn. Aug. 6, 2013). We therefore conclude in this case that the district court did not err by instructing the jury on the doctrine of transferred intent in connection with the attempted-murder charges as to D.J.

### *Sufficiency of the evidence*

Glass argues that, even if the doctrine of transferred intent applies to attempted murder, this court must reverse his convictions for attempted second-degree murder and attempted second-degree murder for the benefit of a gang as to L.H. and D.J. because the evidence was insufficient to prove that he intended to kill L.H. and, as a result, no intent to kill transferred to D.J.

A person is guilty of an attempt to commit a crime if he intends to commit the crime and "does an act which is a substantial step toward, and more than preparation for, the commission of the crime." Minn. Stat. § 609.17, subd. 1 (2012). Second-degree murder

occurs when a person "causes the death of a human being with intent to effect the death of that person or another, but without premeditation." Minn. Stat. § 609.19, subd. 1. "A person who commits a crime for the benefit of, at the direction of, in association with, or motivated by involvement with a criminal gang, with the intent to promote, further, or assist in criminal conduct by gang members is guilty of a crime . . . ." Minn. Stat. § 609.229, subd. 2 (2012).

"'With intent to' . . . means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2012). "Because intent and premeditation are states of mind, they are generally proved circumstantially—by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997). In addition, "[b]ecause the jury is in the best position to evaluate the credibility of witnesses and weigh the evidence, its verdict must be given due deference." *Id.*; *see also State v. Davis*, 656 N.W.2d 900, 905 (Minn. App. 2003) ("The intent element of a crime, because it involves a state of mind, is generally proved circumstantially, and the jury is in the best position to evaluate the credibility of witnesses and weigh the evidence regarding intent."), *review denied* (Minn. May 20, 2003).

The state acknowledges that the evidence of Glass's intent to kill L.H. was circumstantial and that this court therefore must review the sufficiency of the evidence under the two-step circumstantial-evidence test. When proof of an element of a crime is dependent on circumstantial evidence, the reviewing court must apply the two-step circumstantial-evidence test. *See State v. Al-Naseer*, 788 N.W.2d 469, 473–75 (Minn.

6

2010); *see also State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013) ("Generally, if the state's evidence on an element of an offense . . . consists solely of circumstantial evidence, the supreme court applies the circumstantial-evidence standard of review.").

The first step of the circumstantial-evidence test is "to identify the circumstances proved." *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). "[Appellate courts] consider only those circumstances that are consistent with the verdict." *Id.* at 599. In doing so, "[appellate courts] defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Id.* at 598–99 (quotations omitted). "[Appellate courts] construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses." *Id.* at 599 (quotation omitted).

Although Glass concedes that the state proved that "there might have been some animosity between [him] and [L.H.] as a result of [L.H.] leaving the West Side Boys," he argues that testimony that he was "shooting into the crowd" and a witness's "guess[]" that "[Glass] was shooting at somebody particular in the crowd" is not sufficient to prove that he intended to kill L.H. Curiously, Glass contends that "[s]imply firing shots is insufficient to show an intent to kill," but he cites three cases in which the reviewing court concluded that evidence of firing a gun at a victim was sufficient to establish intent to kill. *See State v. Fardan*, 773 N.W.2d 303, 321–22 (Minn. 2009); *State v. Whisonant*, 331 N.W.2d 766,

768 (Minn. 1983); *State v. Chuon*, 596 N.W.2d 267, 270–71 (Minn. App. 1999), *review denied* (Minn. Aug. 25, 1999).

Our careful review of the evidence leads us to conclude that the state proved that Glass was in a car that pulled alongside the group of departing partygoers while playing a song that included the line, "Shoot the whole crowd for one specific person." Glass exited the car, laughed, and said, "Y'all ready?" Glass then ran towards the group, passing by people and calling L.H.'s name. Glass fired his gun into the group multiple times and a bullet struck D.J. Glass had a motive to kill L.H. for changing gangs.

The second step of the circumstantial-evidence test is to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotations omitted). "[Appellate courts] review the circumstantial evidence not as isolated facts, but as a whole." *Id.* In addition, "[appellate courts] examine independently the reasonableness of all inferences that might be drawn from the circumstances proved; including the inferences consistent with a hypothesis other than guilt." *Id.* (quotations omitted). "[Appellate courts] give no deference to the fact finder's choice between reasonable inferences." *Id.* (quotation omitted).

In *Cruz-Ramirez*, the supreme court concluded that evidence that the defendant exited a car and fired a gun multiple times at a group of rival gang members was sufficient circumstantial evidence of the defendant's intent to kill. 771 N.W.2d at 509–10. The court implicitly rejected the defendant's argument that the circumstances proved were "just as consistent" with his intent merely to injure or scare the victims. *See id.* Likewise, we reject

the hypothesis that Glass merely intended to scare or injure L.H. Glass called L.H.'s name and fired live ammunition into a group of people that included L.H., whom Glass had a motive to kill. We conclude that the circumstances proved by the state are consistent with Glass's guilt and inconsistent with any rational hypothesis other than Glass's guilt.

As to his convictions of crimes committed for the benefit of a gang with respect to D.J., Glass also argues that section 609.229, subdivision 2, requires "intent to promote, further, or assist" specific criminal conduct and that, because he did not intend to commit any crimes against D.J., he could not have intended to commit any crimes for the benefit of a gang with respect to her. But in *State v. Vue*, the supreme court agreed with the state that the statutory language, "with the intent to promote, further, or assist in criminal conduct," merely "describes the mens rea (guilty mind) required at the time the person commits the actus reus (wrongful deed)." 797 N.W.2d 5, 17 (Minn. 2011) (emphasis omitted) (quotation omitted). The court rejected the argument that the quoted language requires proof of "intent to promote, further, or assist in an additional specific criminal act." *Id.* Additionally, the supreme court has affirmed convictions of murder committed for the benefit of a gang based on transferred intent. *See, e.g.*, *State v. Caldwell*, 803 N.W.2d 373, 377, 390 (Minn. 2011) (affirming conviction of aiding and abetting first-degree premeditated murder for the benefit of a gang based on transferred intent).

Moreover, Glass provides no authority for his argument. "An assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection." *State v. Wembley*, 712 N.W.2d 783, 795

(Minn. App. 2006) (quotation omitted), *aff'd*, 728 N.W.2d 243 (Minn. 2007). Prejudicial error is not obvious on mere inspection here.

We conclude that the evidence was sufficient to prove that Glass had the intent to kill L.H. and that the district court did not err by instructing the jury on the doctrine of transferred intent. We therefore affirm Glass's convictions.

**Affirmed.**